PHILIP EMMA, Plaintiff-Appellant, *v.* DELORA A. NORRIS, d/b/a BAKER HOTEL, INNKEEPERS, INC. *et al.*, Defendants-Appellees.

(No. 70-20;

Second District—December 3, 1970.

Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for plaintiff-appellant.

O'Brien, Burnell, Puckett & Barnett, of Aurora, Robert F. Casey, of Geneva, for defendants-appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Philip Emma brought a common-law action against the defendants alleging personal injuries resulting from an accident which occurred on June 26th, 1966 in the elevator of the hotel owned by defendant Delora Norris and managed by defendant Innkeepers, Inc. In one of the alternative counts plaintiff alleged he was an employee of Norris and in the other alleged that he was an employee of Innkeepers. Both of these defendants filed motions for summary judgment. Plaintiff appeals from a judgment for these defendants, which was based on findings that Norris was the loaning employer and Innkeepers the borrowing employer within the terms of Ill. Rev. Stat. 1965, ch. 48, par. 138.1(a)4. The court concluded that therefore both defendants were plaintiff's employers, thus precluding common law proceedings against either of them.

The controlling facts are included in the pleadings, attached depositions and affidavits. Emma was a full time employee of the Illinois Youth Commission who worked as a part-time bartender at the Baker Hotel in 1957. At all times in question plaintiff was solely on the payroll of the Baker Hotel.

In 1962 Innkeepers entered into an agreement with Norris which confirmed and incorporated by reference a previous proposal that Innkeepers would manage the hotel for an annual fee. The agreement described the Hotel Baker as the "principal" and Innkeepers as the "agent" to perform managerial services described in the proposal. These included provisions that Innkeepers would engage and pay out of its fee a full time manager who would "interview and select a full staff of experienced supervisory employees—chefs, housekeepers, front office, etc.—and provide for the thorough training of the entire staff"; that Innkeepers would guide the individual inn manager through a "constant close-scrutiny supervision"; that it would offer the owner the benefit of its advice and counsel on matters of policy, conduct a continuing program of research into improvements and give the owner daily reports on the details of operation, as well as monthly interpretations of trends and prospects. The agreement further provided that Innkeepers would use its best efforts in the management of the establishment but that it was understood that it did not guarantee either that there would be profits or that there would not be losses. It also stated that,

"Innkeepers, Inc. assumes no responsibility for the defalcations of employees nor for injuries to persons or property arising out of or in connection with the operation of the establishment".

(In 1964 this portion of the agreement was amended to add the language "Except as to the resident manager for whom it does assume full responsibility". The president of Innkeepers deposed that this provision

was the result of a conversation with Norris's representatives which disclosed that in the hotel's bonding insurance the manager wasn't covered and that as a result Innkeepers had a blanket bond on its managers and the hotel had a blanket bond on employees.)

Floyd Hawk was vice-president of Innkeepers, and testified that he undertook the operation of the hotel in 1961 as resident manager which included management of the entire facilities of the hotel. He was the only one at the hotel paid by Innkeepers. He considered that part of his service was the supervision and management of the Baker Hotel employees. He had no authority to make purchases on behalf of the hotel and stated that, in fact, he never did anything as to major purchases without first getting the O.K. from Delora Norris's representatives. He considered that "I had the power, so to speak, of hiring and discharging". This was confirmed by the statement of Mr. Ziegler, the president of Innkeepers, also in a discovery deposition. However, in answers made under oath to interrogatories, Innkeepers replied that Floyd Hawk, the manager, was the only employee or agent of Innkeepers on the hotel premises.

Delora Norris's auditor stated in an affidavit "that Innkeepers, Inc. has the general supervision of Philip Emma in the performance of his duties".

In response to interrogatories, the plaintiff stated that he had no knowledge of the contract between the hotel and Innkeepers and could not say who his employer was on the date of the occurrence. In plaintiff's deposition taken in 1968 he testified that he had no personal contact with Delora Norris, except that he saw her on the premises occasionally and that he knew that her name was on the liquor license; that the people with whom he dealt at the hotel were Mr. Hawk and Mr. Ziegler; and that as to Hawk, "at the present time he was my employer".

Emma applied for benefits under the Illinois Workmen's Compensation Act following the accident, the application stating that it occurred in the course of his employment by Delora Norris. He received the sum of $5,811.72 for temporary total disability and necessary medical expenses, but there was no adjudication under the compensation act by the Industrial Commission.

There is also in evidence a Workmen's Compensation Liability Policy of Innkeepers which provided for payment of all workmen's compensation liability as imposed by the Illinois Act without exclusion or conditions pertinent to this case. Further coverage provisions provided for payment of liability for damages but excluded any such liability for damages acquired by Innkeepers under contract.

Plaintiff's position is that he must have a common law right of action

against one or the other of the defendants either as a matter of law or as a matter for the jury to determine. However, essentially he argues that under the facts he was not an employee in the service of Innkeepers "under any contract of hire, express or implied, oral or written", and that he is therefore not bound by the Act as to Innkeepers. He urges that at least as a matter of law he did not consent to Innkeepers as his employer for Workmen's Compensation Act purposes and that there is a jury question also as to whether he was engaged in *Innkeepers'* business. He further argues that Innkeepers acted as a management consultant, not as an employer, and that the "loaned servant" provision of the Workmen's Compensation Act is, as a matter of law, not applicable to such management service arrangements which exist over a substantial period of time. Alternatively plaintiff claims that even if there is a "loaned servant" issue, the record requires the finding that this is a jury question when one considers that the agreement between the parties is silent as to the right to hire and fire employees of plaintiff's status.

Defendant Innkeepers claims that there is no question of material fact requiring submission of the case to the jury; that the record clearly shows that when traditional criteria of employment are applied to the facts, Emma was an employee of Innkeepers, the operator of the hotel enterprise. Alternatively, Innkeepers suggests that it may be true that Emma could also have been an employee of Norris as a "loaned employee", or Emma could properly be considered as an employee of both defendants.

Defendant Norris argues that the agreement between her and Innkeepers is an agency agreement and that she remains the employer of Emma as principal. She further argues that Emma is precluded from a common law action against her by his election to file a claim against her under the Workmen's Compensation Act and by the acceptance of benefits under the Act.

■■ Only if there is no question of material fact as to the controlling issue of plaintiff's employment relationship may the trial court properly enter a summary judgment. (*Ruby v. Wayman* (1968), 99 Ill.App.2d 146, 151; *Lumbermens Mut. Cas. Co. v. Poths* (1968), 104 Ill.App.2d 80, 88; *Giova v. Carrol* (1969), 109 Ill.App.2d 259, 268.) The record discloses to us that there are genuine issues of material fact on the issue of plaintiff's employment relationship with Innkeepers, making it error to enter summary judgment in favor of that defendant.

The threshold inquiry is whether Emma was an employee of Innkeepers within the purview of the Workmen's Compensation Act. Emma was initially hired by Norris and worked under the supervision of her manager prior to Innkeepers entry. He thereafter did the same kind of work under the supervision of Hawk, the resident manager furnished by

Innkeepers. If Emma thereafter became an employee of Innkeepers, it must have been on the basis of a contract implied from the circumstances since there was no express contract entered into between Innkeepers and Emma.

■■ Innkeepers properly observed that under its contract with Norris it furnished more than mere supervisory and consulting services. It actually operated the hotel under its agreement that Norris was to "make the establishment subject to the management of Innkeepers, Inc.". However, it is not clear to us that as a matter of law Innkeepers thereby became the employer of Emma. Innkeepers relies upon evidence that, aside from being paid by Norris, Emma admitted in his deposition that he had no personal contacts with Delora Norris nor did he receive any directions from her but only saw her occasionally on the premises and noted that the liquor license was in her name; that Hawk, the resident manager furnished by Innkeepers, stated in his deposition that he had the power "so to speak of hiring and discharging waitresses, or the bartenders, or the bell boys or anything of that nature"; that Ziegler, the President of Innkeepers, in his deposition also stated that Hawk had such prerogatives. Aside from the fact that these depositions were made after plaintiff's accident and were necessarily self-serving conclusions as to the ambit of the contract between Innkeepers and Norris, these statements are inconsistent with the agreement which stated in substance that Innkeepers is given the power to engage the resident manager, but, as to other employes, Innkeepers shall "interview and select a full staff of *supervisory* employees" (emphasis added). The agreement does not in any specific terms give Innkeepers, or its resident manager, the right to hire or discharge non-supervisory employees, a category in which plaintiff could most reasonably be included. The power to discharge or its equivalent is conceded to be a condition precedent to being an employer. (*Meyer v. Industrial Com.* (1932), 347 Ill. 172, 179; *Densby v. Bartlett* (1925), 318 Ill. 616, 622. Under the circumstances shown by this record, whether Innkeepers had the right to discharge the plaintiff is not so clearly evident that the issue should be determined by summary judgment rather than by presenting it to the trier of the facts.

But more important in our view is the requirement that the application of the Workmen's Compensation Act requires a *consensual* relationship between the alleged employer and the claimed employee. (*McHugh-Brighton v. Ind. Com.* (1969), 42 Ill.2d 52, 56, 57.) The relationship may be implied from circumstances in the absence of an express contract. A person may be the general servant of one master and yet may become the loaned servant of another, but he must have consented to the new relationship. See *Fisher v. City of Seattle* (Wash. 1963), 384 P.2d 852,

855; *Murray v. Union Ry. Co. of New York City* (1920), 127 N.E. 907.

Innkeepers' argument that there is no question that Emma consented impliedly to his employment by Innkeepers is based upon the admitted facts that Emma knew that Innkeepers was operating the hotel, that he had no personal contact with Norris nor received any directions from her; that Emma testified in his deposition,

"Q: All right. You referred to a Mr. Hawks. What is Mr. Hawk's position with respect to the Baker Hotel?

A: At the present time he was my employer, and also the assistant manager of Innkeeper's, Inc.";

that Emma stated that his work was fully supervised by Innkeepers and Mr. Hawk. To compound the confusion, Innkeepers' President Ziegler in response to an interrogatory as to whether he had "any employee, agent or servants on the premises of the Baker Hotel in any capacity whatsoever", answered "Floyd Hawk, manager". In view of the fact that Emma did not know the terms of the agreement and had never been given access to it, together with the evident confusion as to whom was employing whom, we think that this should not have been decided as a matter of law, but that summary judgment should have been denied and the entire circumstances thoroughly aired before a jury.

*Highway Ins. Co. v. Sears, Roebuck & Co.* (1968), 92 Ill.App.2d 214, cited by Innkeepers as authority for the entry of summary judgment, is distinguishable on its facts. Therein it was undisputed that *Sears* had the right to terminate the relationship with the employee who was furnished and paid by another employer who was in the business of furnishing employees to other employers. Here we find that there are conflicting inferences bearing upon Innkeepers right to discharge or otherwise terminate Emma's employment and also bearing on the additional issue of consent which was not present in *Sears*, thus presenting a question of fact rather than one of law.

Parenthetically, we cannot agree with plaintiff's contention that a management consulting firm such as Innkeepers cannot be a sole employer or a borrowing employer under the Workmen's Compensation Act as a matter of law. The name used to describe a relationship cannot establish the conclusion that a party merely performs supervisory services for a fee and assumes no status as an employer. The relationship between the parties must be determined from an analysis of the evidence, applying the factors which have been held significant in determining whether an employer-employee contract exists. *Mohan v. Publicker Industries, Inc.* (Pa.-1966), 222 A.2d 876 cited by plaintiff stands for no more than this.

Plaintiff's argument that the compensation insurance carried by Inn-

keepers excluded him from coverage and thereby prevented Innkeepers from claiming that it was an employer under the Workmen's Compensation Act is not persuasive. The policy insuring Innkeepers contains coverage for all workmen's compensation liability imposed under the Act without relevant restriction. It is not limited to employees who were used as a basis for computation of premiums; thus, *Jennings v. Bituminous Cas. Corp.* (1964), 47 Ill.App.2d 243, cited by plaintiff, is inapplicable to the facts of this case. Additionally, we do not agree with plaintiff's further contention that the amendment to Paragraph 4 of the Agreement between Innkeepers and Norris is an "agreement to the contrary", which places Innkeepers outside of the Act under the lending-borrowing provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1965, ch. 48, par. 138.1(a)(4). At most the agreement attempts to absolve Innkeepers from liability to reimburse Norris for workmen's compensation claims paid by Norris under the Act, as was the interpretation in *Mojonnier, Inc. v. Industrial Com.* (1968), 41 Ill.2d 128, 133.

■■ Norris has argued that its contract with Innkeepers as a matter of law establishes the employment relationship between Emma and both defendants; however, what we have previously said in considering the argument of Innkeepers would also be applicable here. Norris makes a further argument that the agreement as a matter of law clearly establishes a principal and agency relationship between Norris and Innkeepers and that it therefore follows that since the acts of the agent are those of the principal, so "every incident of an employment relationship is provided thereby on behalf of Delora Norris". Innkeepers has, to the contrary, claimed to be the operator of the entire business of the hotel on the basis of the same agreement. In our view it is not determinative of the case to decide whether Innkeepers is an agent of Norris. The doctrine of *respondeat superior* may or may not apply as between Norris and Innkeepers, operating the hotel, but this does not determine that Emma, working at the hotel, is an employee of Norris for workmen's compensation purposes. The common law rule of *respondeat superior* does not require that an injured third person prove that the employee who injures him has consented to be an employee of the master who is sued; but employment under the Workmen's Compensation Act presupposes a contractual arrangement between the employee and his employer and requires consent to any change in his relationship which could deprive the employee of valuable common law remedies. *Fisher v. City of Seattle,* 384 P.2d 852, 854, 855, *supra; McHugh-Brighton v. Ind. Com.,* 42 Ill.2d 52, *supra;* 1 Larson, Workmen's Compensation Law, Sections 47.10, Section 48, *et seq.* In this view, the incidents of Emma's employment— whether solely in Norris, or in both Norris and Innkeepers on a "loaned

660

servant" theory, or entirely in Innkeepers by reason of its operation of the hotel,—are not so clearly evident from the record that they may be determined by summary judgment. Issues of the right to discharge and the employee's consent to the transfer of employer involve material facts which are co-related to the case against both Innkeepers and Norris.

Norris has argued finally that Emma is also precluded from beginning a common law action against her by having elected to file a claim against her for the workmen's compensation and by having accepted voluntary payments. She cites *Moushon v. National Garages, Inc.* (1956), 9 Ill.2d 407 as authority. That case essentially held that when the particular type of employment was admittedly covered under the Workmen's Compensation Act, that the Act became the exclusive remedy and recovery would not be permitted both under the Act and at common law against the same employer to recover additional damages said to arise out of and become connected with the same injury, but not specifically covered under the act. When an issue is raised, as here, by an applicant that he had no knowledge of and no access to the terms of an agreement alleged to affect his employment status, we will not rule that plaintiff has made a binding irrevocable election to recover against only Norris and then only under the Workmen's Compensation Act.

We, therefore, reverse and remand with directions to deny defendants' motion for summary judgment and to proceed to trial in accordance with this opinion.

Reversed and remanded with directions.

DAVIS, P. J. and MORAN, J., concur.