JAMES M. O'LOUGHLIN, Plaintiff-Appellant, v. SERVICEMASTER COMPANY LIMITED PARTNERSHIP *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—89—3203

Opinion filed June 19, 1991.

Grubman & Nathan, P.C., of Chicago (James A. Payonk, Jr., of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Carlton D. Fisher, and Bruce L. Carmen, of counsel), for appellees.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff was a painter employed by a school district. Defendants were management services contractors, hired by the district to manage the department in which plaintiff was employed. In the circuit court of Cook County, plaintiff filed suit against defendants after falling from a scaffold. The circuit court dismissed the suit on the ground

that defendants were a borrowing employer of plaintiff and that his complaint was barred. Plaintiff appealed, and we now reverse and remand.

### FACTS

Plaintiff, James M. O'Loughlin, was a summer employee of East Maine School District 63 (the school), of Des Plaines, Illinois. His job was to paint the exteriors of the school's buildings. On August 5, 1988, a scaffold on which he was working fell to the ground from a height of two stories, causing him injury.

Defendants are the ServiceMaster Company Limited Partnership, which is a Delaware limited partnership, and ServiceMaster Management Corporation, which is a Delaware corporation and is the limited partnership's general partner. On March 24, 1987, by the general partner, the limited partnership had entered into a contract with the school for management of the school's support services.

The contract collectively referred to the limited partnership and the general partner as "ServiceMaster." It called for ServiceMaster to provide administration and technical direction in the management of the school's custodial and maintenance departments. Under the contract, defendants would furnish and pay their own management employees. As for the school's employees, the contract provided as follows:

"1. **SERVICES:** \*\*\*

\* \* \*

b. **SCHOOL Personnel:** It is expressly understood that all presently employed employees of the SCHOOL in the departments managed by SERVICEMASTER \*\*\*, who will be trained, managed and directed by SERVICEMASTER under the provisions of this Agreement, shall remain employees of the SCHOOL, and shall not at any time during the term of this Agreement be deemed to be employees of SERVICEMASTER. \*\*\*

(1) SERVICEMASTER shall not be regarded as a party to any collective bargaining agreement or agreements which have heretofore or may hereafter be entered into by the SCHOOL. SERVICEMASTER shall not participate in any decisions as to wages, hours or other working conditions for employees of the SCHOOL.

(2) The SCHOOL shall hire, discharge or discipline all such employees in accordance with SCHOOL policy and procedures. The SCHOOL shall pay all wages and salaries of its support

service employees, and shall pay all payroll and other taxes, fees, worker's compensation insurance and other charges or insurance levied or required by any federal, state, or local statutes relating to the employment of its employees. Certificates of insurance as evidence of proper employee insurance coverage shall be supplied to SERVICEMASTER upon request.

c. **SERVICEMASTER Services:** SERVICEMASTER shall train, manage and direct all support service employees of the SCHOOL in the performance of their respective duties, subject always to the control retained by the SCHOOL as employer of said employees.

d. **Administrative Responsibilities:** As an accommodation and acting solely as agent for the SCHOOL, SERVICEMASTER will perform all administrative duties relating to the SCHOOL's support service employees, including maintaining time records for these employees and furnishing to the SCHOOL data from which the SCHOOL can formulate its regular payroll.

\* \* \*

4. **INDEMNIFICATION:** \* \* \* It is specifically understood that SERVICEMASTER is responsible for training, scheduling and supervision of the SCHOOL's support service employees and that SCHOOL retains ultimate control for hiring, disciplining and termination of SCHOOL employees.

\* \* \*

6. **COVENANT:** SERVICEMASTER and SCHOOL agree that at no time during the term of this Agreement or for a period of one (1) year immediately following the termination of this Agreement will it call upon any employees of the other for the purpose of employing, hiring or otherwise interfering with the contractual relationships of such employees without the prior written approval of the other party \* \* \*.

\* \* \*

12. **GENERAL CONDITIONS:**

a. **Independent Contractor:** Except for the specific duties and responsibilities described in paragraph 1 above, in which SERVICEMASTER is acting as SCHOOL's agent, SERVICEMASTER agrees that in all other respects its relationship to the SCHOOL will be that of an independent contractor \* \* \*."

Joseph G. Buri, who was defendants' director of operations for the school, testified on deposition as follows:

"Q. Have you ever hired any of the members of the operations staff for District 63?

A. Yes.

Q. How many?

A. A few. Three, four.

\* \* \*

Q. Did you have to have the permission of someone at the school district or the board in order to hire these people?

A. The board is ultimately in control of all hiring and firing.

Q. Who gave you permission to interview these people for the positions?

A. (No response.)

Q. If anyone?

A. That is my role at the school district, given to me by the superintendent.

\* \* \*

Q. After you interview someone you then submit your recommendations to the board, is that how it works?

A. To the associate superintendent.

Q. Then what happens?

A. They are hired.

Q. Does the board have to give the okay or just the associate superintendent?

A. The board, as I said before, must hire and fire all personnel in the school district. That is by state law.

Q. So that the person that you interview is not hired until the board has somehow put their official stamp on it?

A. Absolutely.

Q. And if you had interviewed someone and recommended they be hired and the board didn't want them hired, they just wouldn't be hired, despite your recommendation?

A. Well, I think the board values my recommendation and, therefore, that has never occurred.

Anyone I recommended to be reprimanded or hired, fired, whatever the situation may be, it has gone in just that fashion."

Regarding his authority to discharge members of the school's operations staff, Buri testified as follows:

"Q. \*\*\* [I]n working pursuant to this contract with East Maine School District 63, do you have authority to fire any members of the operations staff?

* * *

A. Yes, I do. Subject to board approval.

* * *

Q. Has anyone ever been—has any member of the operations staff ever been terminated pursuant to your recommendation?

A. No.

Q. Have you ever recommended that anyone be terminated?

A. No."

Plaintiff was hired and paid by the school. Defendants never paid plaintiff. Plaintiff had worked for the school the previous summer and, for the summer in question, was solicited by the school for employment through a letter on the school's letterhead, signed by or on behalf of an administrative employee of the school. Plaintiff was also notified through a similar letter that he had been hired by the school.

All of plaintiff's work was performed on the school's premises. The tools and equipment used were owned by the school. While working, plaintiff wore a uniform bearing the school's name. Plaintiff was instructed by the school to conduct himself as a representative of the school while working. Plaintiff reported each day to an employee of the school.

Though Buri evaluated some summer employees' work, he never evaluated plaintiff's, because he did not have enough contact with plaintiff for a credible evaluation. Rather, an employee of the school evaluated plaintiff's work. An employee of the school approved plaintiff's time-sheet entries; that approval was then approved by Buri. The time sheet bore the school's name.

Though defendants had a policy and documentation procedure for reporting their own employees' on-the-job injuries, the policy and procedure were not implemented when plaintiff was injured. Plaintiff's counsel advise us in their brief that they represent plaintiff in a workers' compensation matter pending against the school before the Industrial Commission and that, as of the date when the brief was filed, defendants had not filed an appearance in that matter as plaintiff's employer.

On account of his injuries, plaintiff filed a complaint at law against defendants on October 17, 1988. Count I alleged violations of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60). Count II alleged negligence.

The complaint charged that defendants had the duty of training employees of the school in the care and maintenance of the school's buildings. The complaint also charged that defendants were manag-

ing, supervising, directing, and controlling the operations involved in care and maintenance of the school's buildings, including the manner, scope, and timing of the painting work that plaintiff was performing; that defendants prescribed and enforced various safety rules; and that defendants had authority to stop the work and were otherwise in charge of the work in progress.

Pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9)), defendants moved on December 23, 1988, for dismissal of plaintiff's complaint and for entry of a final and appealable order.

The motion alleged that it was clear as a matter of law from the pleadings and the contract that, as contemplated by section 1(a)(4) of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1(a)(4)), defendants were plaintiff's borrowing employer and the school was his loaning employer: "In other words, [the school] furnished [plaintiff] to the Defendants to perform painting jobs prior to and on August 5, 1988, and he was subject to the Defendants' direction and control during this time." The motion further alleged that, under section 5(a) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(a)), plaintiff's sole remedy against defendants for his injuries was a claim under the Act, not a suit at law.

In response, plaintiff argued that the contract between the school and defendants demonstrated that plaintiff was the school's employee; that plaintiff was not wholly under defendants' rather than the school's control; that defendants had no power to discharge plaintiff; that defendants were attempting to characterize plaintiff as a permanently borrowed employee, which would be self-contradictory and legally untenable; that plaintiff never acquiesced or consented to defendants' becoming his employer; that the benefit of plaintiff's work accrued solely to the school and not to defendants; that all his work was done on the school's premises; and that defendants had filed no appearance in connection with plaintiff's workers' compensation claim. Plaintiff also pointed to other facts that tended to disprove defendants' allegation that he was their borrowed employee.

In reply, defendants asserted that their contract with the school did not exclude the possibility of plaintiff's being lent to them, even though he remained a general employee of the school. They asserted that plaintiff was wholly under their direction and control; that the length of a borrowed-employment relationship is insignificant; and that, in any case, because plaintiff was only a summer employee and because defendants' contract with the school had a finite term, their

claim of borrowed employment could not be characterized as a claim of permanent borrowing.

Defendants added that ultimate hiring-and-discharge power pertains only to the general-employment relationship, but the practical power to discharge plaintiff rested with defendants in the context of a borrowed-employment relationship with him. According to defendants, plaintiff impliedly acquiesced to borrowed employment because, since he was in his second summer of employment, he "must have known the employment conditions" and understood who controlled his work. Defendants also asserted that the benefit of plaintiff's work was jointly received by themselves and the school, because the work allowed them to perform under the contract,[1] and even minimal benefit is enough to support a borrowed-employment relationship. In defendants' view, it was irrelevant that they had failed (assertedly because of plaintiff's failure to serve them with process) to appear in the workers' compensation case. Their response concluded that plaintiff's status resembled that of a joint employee, except that he was hired and paid only by the school and was allegedly under the direction and control only of defendants.

At oral argument on their section 2—619 motion, defendants contended flatly that plaintiff was the joint employee of themselves and the school. They had never before argued joint rather than borrowed employment.

In reliance on *Evans v. Abbott Products, Inc.* (1986), 150 Ill. App. 3d 845, 502 N.E.2d 341, the court granted defendants' motion and dismissed plaintiff's complaint. This appeal by plaintiff followed.

ANALYSIS

Plaintiff contends that he was an employee of East Maine School District 63 and not a borrowed employee, and that the court therefore erred substantively in granting defendants' dismissal motion.

■ Section 1(a)(4) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1(a)(4)) recognizes the concept of "loaning" and "borrowing" employers. (See *A.J. Johnson Paving Co. v. Industrial Comm'n* (1980), 82 Ill. 2d 341, 347-48, 412 N.E.2d 477, 480.) The section provides that, for workers' compensation benefits on ac-

---

[1]At oral argument in this court, defendants also asserted that they benefited from plaintiff's work because, if he were efficient and they could thereby keep payroll costs relatively low, they would derive greater revenue. Under the contract, their basic monthly payment was to be reduced by the amount of the school's monthly payroll costs.

count of injuries to a borrowed employee, a covered borrowing employer subject to the Act is jointly and severally liable with a covered loaning employer. In addition, the section specifically provides that employers in the business of furnishing employees to other covered employers and of paying the employees for their services to the other employers are to be deemed loaning employers.

If covered by the Act, both borrowing employer and loaning employer share the immunity conferred by section 5(a) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(a)) from any damage action, except an Industrial Commission claim, for work-related injuries to an employee. *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 388, 385 N.E.2d 664, 668.

Illinois courts have identified several factors as bearing on whether a borrowed-employment relationship exists. The factors include the extent of an allegedly borrowing employer's control over a plaintiff (*M & M Electric Co. v. Industrial Comm'n* (1974), 57 Ill. 2d 113, 116-17, 119, 311 N.E.2d 161, 163, 164; *Freeman v. Augustine's Inc.* (1977), 46 Ill. App. 3d 230, 233-34, 360 N.E.2d 1245, 1247-48); whether the allegedly borrowing employer had power to discharge a plaintiff (*M & M Electric Co.*, 57 Ill. 2d at 119, 311 N.E.2d at 164; *Emma v. Norris* (1970), 130 Ill. App. 2d 653, 657, 264 N.E.2d 573, 577); whether a plaintiff consented or acquiesced to the alleged loan of services (*M & M Electric Co.*, 57 Ill. 2d at 119, 311 N.E.2d at 164; *Nutt v. Pierce Waste Oil Service, Inc.* (1983), 112 Ill. App. 3d 612, 616, 445 N.E.2d 928, 931; *Emma*, 130 Ill. App. 2d at 657, 659, 264 N.E.2d at 577, 579); the terms of any written contract between the two alleged employers, though the contract is not conclusive (*Emma*, 130 Ill. App. 2d at 657, 659, 264 N.E.2d at 577, 578); the length of service for the allegedly borrowing employer (*Nutt*, 112 Ill. App. 3d at 616, 445 N.E.2d at 931; *Freeman*, 46 Ill. App. 3d at 234, 360 N.E.2d at 1248); the identity of the party for whom the employee's services are being performed (*Freeman*, 46 Ill. App. 3d at 234, 360 N.E.2d at 1248); and manner of hiring (*Mosley v. Northwestern Steel & Wire Co.* (1979), 76 Ill. App. 3d 710, 719, 394 N.E.2d 1230, 1237).[2] It is also said that a change in the nature of one's work, from the first employer's usual work to some special or different work for the second em-

---

[2]Defendants cite *Clark v. Industrial Comm'n* (1973), 54 Ill. 2d 311, 297 N.E.2d 154, as stating the factors for determining a borrowed-employment relationship. However, the *Clark* factors were enunciated for purposes of determining whether an individual was an employee or an independent contractor, not for determining whether the individual was a borrowed employee.

ployer, will indicate borrowed employment. *Mosley*, 76 Ill. App. 3d at 720, 394 N.E.2d at 1238.

Courts in other States have used four principal criteria for determining the existence of a borrowed-employment relationship: (1) which employer controls the employee's activities, (2) which employer's business is benefiting, (3) which employer is paying, and (4) which employer has the power to hire or discharge the employee. See Casenote, *Workmen's Compensation—The Rights of the Lent Servant Against the General or Special Employer*, 9 Ga. St. B.J. 556, 558 n.15 (1973); Note, *The Borrowed Employee Doctrine in Workmen's Compensation*, 21 Drake L. Rev. 176, 183 (1971).

The Illinois case of *M & M Electric Co.* recognized that the primary factor in determining a borrowed-employment relationship had been expressed as the right to control the manner in which the employee's work was to be done. (*M & M*, 57 Ill. 2d at 116-17, 311 N.E.2d at 163.) However, *M & M* did not say that the degree of control over manner of performance was the only relevant test for a borrowed-employment relationship. In fact, the *M & M* plaintiff "could not be considered an employee of [the allegedly borrowing employer] unless it [could] be shown that the very nature of the project gave control over him to [that employer], *and* that he implicitly knew of and agreed to this change of control." (Emphasis added.) (57 Ill. 2d at 118, 311 N.E.2d at 163.) Moreover, in the *M & M* court's view, the relevant power to control included the power to discharge, which the allegedly borrowing employer did not possess. 57 Ill. 2d at 119, 311 N.E.2d at 164.

Elsewhere, it has been said that, even if the control factor is deemed most important, no one criterion should be solely determinative and that in any event both the control factors and the benefit factor are inherently ambiguous. (9 Ga. St. B.J. at 556 n.3, 558 n.15 (discussing employee's remedies against allegedly borrowing employer); see also Skogland, *Borrowed Servants*, 76 Comm. L.J. 307 (1971) (discussing vicarious liability for borrowed employee's torts); Note, *Borrowed Servants and the Theory of Enterprise Liability*, 76 Yale L.J. 807, 811 (1967) (same).) Perhaps partly for such reasons, a leading treatise writer lists, as the threshold factor, whether the employee has expressly or implicitly agreed to borrowed employment. See 1C A. Larson, *Workmen's Compensation* §§48.00, 48.11 (1990) (hereinafter Larson).

Professor Larson notes that control questions first emerged in a common law context involving employers' disputes over who should be vicariously liable for an employee's acts—a context in which the

employee's own understandings, rights, or liabilities were at best an afterthought. By contrast, in workers' compensation law, resolution of the borrowed-employment question determines whether the employee retains rights to sue for negligence or is relegated to a compensation claim. (1C Larson §48.12 (1990).) Because of the seriousness of the employee's rights at issue, says Larson, if employee agreement to a borrowed-employment relationship cannot be shown, "the investigation is closed, and there is no need to go on into tests of relative control and the like." 1C Larson §48.11, at 8—440 (1990).

Illinois courts agree that the employee's express or implied acquiescence is essential to a borrowed-employment relationship. *E.g., Johnson Paving*, 82 Ill. 2d at 348, 412 N.E.2d at 480-81; *Trenholm v. Edwin Cooper, Inc.* (1986), 152 Ill. App. 3d 6, 503 N.E.2d 1067.

■ The present plaintiff contends that whether he acquiesced to a borrowed-employment relationship was a disputed factual issue. If so, the circuit court's ruling was at least partly one of fact and should be reviewed as such, as in *Emma v. Norris* (1970), 130 Ill. App. 2d 653, 658, 264 N.E.2d 573, 578.

Here, Buri testified that he had told members of the school's operations staff that they were paid by the school and he was paid by defendants but his role was to supervise them. Plaintiff was hired and paid by the school through correspondence on school letterhead. All of his work was done on school premises while using school equipment and wearing a school uniform. He reported each day to a school employee and was told to conduct himself as a school representative. A school employee evaluated his work and initially approved time sheets that he had signed and that bore the school's name. On the other hand, defendants' employee Buri was ultimately responsible for plaintiff's day-to-day direction and control, and Buri ultimately approved the time sheets.

In regard to acquiescence, defendants argue that, because plaintiff returned to work a second summer, there was "some evidence" that he had "implicitly acquiesced" to defendants' directing and controlling his work. Defendants also argue that, because plaintiff did not oppose their section 2—619 motion by affidavit or deposition testimony, and because the only "evidence" in the record is the "inference" that he implicitly acquiesced by returning for a second summer, we must assume that plaintiff consented to defendants' direction and control, and the circuit court correctly ruled on acquiescence as a matter of law.

We need not and shall not make the assumption desired by defendants. First, defendants themselves initially failed to support their own section 2—619 motion by affidavit, as they should have

done when the ground on which they rely (plaintiff's return to work for a second summer) does not appear on the face of the complaint they attack. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a).) Later, defendants merely attached a copy of deposition testimony to their reply to plaintiff's response to their motion. Second, an inference is not the same as a fact in evidence, particularly when the inference for which defendants contend is not dictated by any legal rule and when a contrary inference can be drawn as easily. It is a fact that plaintiff returned a second summer, but it is only a debatable inference that by so doing he acquiesced to defendants' control. Third and most important, here there was so little factual evidence of plaintiff's acquiescence that we can sustain no ruling on the section 2—619 motion, whether as a matter of law or of fact, that he had acquiesced to a borrowed-employment relationship.

On the control issue, defendants cite *M & M Electric Co.* Yet, *M & M* might be authority for finding borrowed employment here only if plaintiff could be shown to have acquiesced to the loan and if "the very nature of the project" gave control over him to defendants. (*M & M*, 57 Ill. 2d at 118, 311 N.E.2d at 163.) The *M & M* plaintiff had been sent by his electrical company employer to complete an electrical installation at a steel mill clearly belonging to another company. Yet, because the steel company could not control the manner of his work, it had not become his borrowing employer. Here, the "very nature" of plaintiff's work as a painter of his school employer's own buildings did not give control over him to defendants; only the management contract (to which he was not a party) did that. Even then, defendants did not hire him and have not shown that they had the power to discharge him. Therefore, *M & M* does not aid defendants.

Defendants assert that, though the school retained formal power to hire and discharge plaintiff, defendants had effective, *de facto* power to do so. Yet the most that defendants' employee Buri claimed was a power to discharge that was subject to approval of the school's board; in other words, according to him, he had authority to recommend to the board that plaintiff be discharged. He had never tested his "effective" power by recommending that anyone be terminated. He also acknowledged that he had not hired plaintiff but that the school had done so.

Defendants' brief seeks to redirect the inquiry from whether a borrowed-employment relationship existed to whether a relationship of joint or of dual employment existed. (*Cf. American Stevedores Co. v. Industrial Comm'n* (1951), 408 Ill. 445, 447, 97 N.E.2d 329, 330 (shared control and benefit equate with joint employment); 1C Larson

§48.41 (1990) (joint and dual employment distinguished).) Accordingly, for example, defendants minimize the importance of plaintiff's argument that he was not *wholly* under defendants' control. That argument, say defendants, is relevant only to an issue of borrowed employment and is less important than the right to exert *some* control.

Despite defendants' efforts to recharacterize their relationship with plaintiff as that of a joint rather than a borrowing employer, they advanced no such position until oral argument before the trial court, when plaintiff objected to their shift of position. At oral argument before us, defendants likewise receded from their borrowed-employment theory, yet did not press a joint-employment theory but merely characterized plaintiff's employment relationship with themselves as "unique."

Regardless of defendants' shifting ground, the trial court based its decision largely on a borrowed-employment case, *Evans v. Abbott Products, Inc.* (1986), 150 Ill. App. 3d 845, 502 N.E.2d 341. The *Evans* plaintiff, an employee of a temporary help agency, had been assigned to work elsewhere for an agency client. The client became his borrowing employer because he had implicitly acquiesced to the known relationship and because the borrowing employer could dismiss the plaintiff from the job he was performing for it. By now abandoning any theory of borrowed employment, defendants abandon the very *Evans* rationale that undergirded the decision for which they contend.

Defendants do cite *Dildine v. Hunt Transportation, Inc.* (1990), 196 Ill. App. 3d 392, 553 N.E.2d 801. However, *Dildine* was a case of joint employment. *Dildine* is readily distinguishable from the present cause on its facts. Here, there was no common ownership of employing entities as in *Dildine*; rather, defendants, as independent contractors, had merely entered into a management contract with the school. Rather than paying plaintiff benefits under a workers' compensation policy naming the school as additional insured, defendants contractually disclaimed any responsibility for workers' compensation coverage of plaintiff and are paying plaintiff no benefits. The accident site was owned by the school, not by defendants. The only service performed by plaintiff was for the school, not for defendants, who merely supervised those services and got paid for doing so. Not only is it disputed whether defendants could discharge plaintiff, but the weight of the evidence is that they could not. Therefore, *Dildine* not only fails to support the theory of borrowed employment on which the trial court's decision was based, it also fails to support recharacterizing defendants as plaintiff's joint employer.

As defendants point out, it is generally true that a trial court judgment, regardless of its articulated basis, may be sustained on any basis warranted by the record. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12.) Accordingly, even if defendants were not a borrowing employer, we might affirm the trial court's judgment if defendants were a joint employer. However, neither by citing *Dildine* nor in any other way have defendants established that they were plaintiff's joint employer.

Defendants did not prove that plaintiff partly was working for them rather than only for the school. They also did not prove that plaintiff had a contract with them. See 1C Larson §48.41, at 8—553 (1990); compare *Freeman*, 46 Ill. App. 3d 230, 360 N.E.2d 1245 (where employee worked in quasi-joint employer's own laundry room, employee's contract with latter employer implied; both employers shared control and benefit of employee's work), with *Nutt*, 112 Ill. App. 3d 612, 445 N.E.2d 928 (where work premises, tools, payroll, act of hiring, and power to discharge were original employer's, no joint employment by affiliated company whose vehicle plaintiff repaired, even though affiliate shared in benefit; collecting joint-employment cases).

The case of *Emma v. Norris* (1970), 130 Ill. App. 2d 653, 264 N.E.2d 573, also weakens defendants' argument. In *Emma*, summary judgment for the defendants was reversed because a factual issue existed as to whether a hired management company had become the plaintiff's borrowing employer. The *Emma* court did not actually have to decide the borrowed-employment issue; however, the court emphasized (1) that the management company's contract did not expressly give it authority to hire or discharge and (2) that, "more important[ly]," a consensual relationship was required between the management company and the allegedly borrowed employee. 130 Ill. App. 2d at 657, 264 N.E.2d at 577.

In *Emma*, questions of consent and of authority were too murky for summary judgment and needed to go before a jury. (130 Ill. App. 2d at 658, 264 N.E.2d at 578.) Likewise, in the present cause the evidence was too conflicting for such questions to be decided as a matter of law, if that is the basis on which the circuit court decided them. Besides, to the extent that the court relied on *Evans v. Abbott Products, Inc.*, for its decision, it relied on a case involving wholly different facts. Therefore, defendants err in arguing that as a matter of law they were plaintiff's employer.

In addition, if the circuit court decided the questions of authority and consent as issues of fact rather than law, its decision was against

40

the manifest weight of the evidence. Defendants can point to no fact, other than plaintiff's return a second summer, that might support his acquiescence to a borrowed-employment relationship; but, if plaintiff had no reason to know of the alleged relationship during the first summer, he had no more reason to know of it the next summer. Defendants can point to neither a clear grant nor any exercise of independent authority on their part to hire or discharge an employee such as plaintiff, whereas plaintiff had every reason to consider himself an employee of the school and not of defendants.

Accordingly, we hold that it was error to grant defendants' motion to dismiss. The judgment of the circuit court of Cook County is reversed, and this cause is remanded to that court for further proceedings.

Reversed and remanded.

CERDA, P.J., and RIZZI, J., concur.