First Division 

December 22, 1997

No. 1-95-4199

MAURICIO BARRAZA and THERESA BARRAZA,

Plaintiffs-Appellants,

v.

TOOTSIE ROLL INDUSTRIES, INC.,

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 92 L 987

Honorable

Philip Bronstein,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

In this personal injury case, Mauricio and Theresa Barraza (plaintiffs) filed a complaint in negligence and strict product liability against defendant Tootsie Roll Industries following plaintiff Mauricio Barraza's injury at his workplace, the Sweets Mix factory.  Plaintiffs appeal from the trial court's grant of summary judgment in favor of the defendant.

  The trial court granted summary judgment on the basis that defendant Tootsie Roll Industries was Mr. Barraza's employer as a matter of law and thus immune from a common law action by plaintiffs against it.  The exclusive remedy available to an injured worker against his employer is through the Illinois Worker's Compensation Act. 820 ILCS 305/1(a)(4) (West 1994).  The issue on appeal is whether the trial court properly granted summary judgment to defendant Tootsie Roll Industries on the basis that it was Mr. Barraza's employer thereby barring plaintiffs from pursuing a common law action against defendant.

I. FACTS

Plaintiff Mauricio Barraza began working at the Sweets Mix factory after his cousin, a worker at the factory, informed him of a job opening there.  He applied for the job directly to Sweets Mix and began work the same day.  His job involved loading sugar into bags using a machine called a "sugar bagging machine."  Sweets Mix, located at Lake Calumet Harbor, is a wholly owned subsidiary of Tootsie Roll Industries.  It purchases domestic and foreign sugar and makes it into sweeteners for use by Tootsie Roll Industries.  The factory's location is designed to take advantage of a "foreign trade zone," which offers financial advantages by processing raw sugar before it is technically admitted into the United States via customs.

Mr. Barraza was paid through a company called Bee Groth, a temporary employment service.  Bee Groth entered into a contract with Sweets Mix and Tootsie Roll Industries to provide laborers for the Sweets Mix plant, and agreed to provide workers' compensation insurance covering both Sweets Mix and Tootsie Roll Industries.  Under the contract, Bee Groth agreed to indemnify and hold harmless both entities for any workers' compensation claim which could arise through the employment of workers under the contract.  Mr. Barraza applied for his job not at Bee Groth or Tootsie Roll Industries, but at the Sweets Mix factory.  He testified he was unaware of what connection defendant Tootsie Roll Industries had with the Sweets Mix operation.

The Sweets Mix factory is the sole source of sugar for candy production by Tootsie Roll Industries.  Though Sweets Mix is actually a separate corporation, all of the officers of Sweets Mix are also on the board of Tootsie Roll Industries, though the same is not true vice versa.  In addition, the two corporations regularly file consolidated federal tax returns.  The two companies maintain operations at different locations, but share the same corporate address.  At the time of the incident involving Mr. Barraza, Tootsie Roll Industries owned all of the processing equipment in use at Sweets Mix, including the machine which caused his injury.

Defendant claims that all of the direction and supervision of Mr. Barraza at the plant was conducted by employees of Tootsie Roll Industries.  Plaintiffs, however, state these persons were actually paid by entities other than Tootsie Roll Industries.  Defendant agrees that some of these individuals received their paychecks through a "payroll subsidiary," though the benefit plans for the employees came directly from Tootsie Roll Industries.  According to the injured plaintiff, he was unaware of the relationship between Sweets Mix and Tootsie Roll Industries and the record is silent as to whether Mr. Barraza knew his supervisors were employees of Tootsie Roll Industries.

Mr. Barraza was severely injured while working on the sugar-bagging machine.  Plaintiffs initiated an action before the Industrial Commission against Sweets Mix and Bee Groth for the injuries sustained in the accident.  The arbitrator determined that Mr. Barraza "was loaned by Respondent Office Assistants, Inc. a/k/a/ Bee Groth, Inc., to The Sweets Mix Company," and held that Bee Groth was the party "primarily responsible" for payment and liability.  Plaintiffs then filed suit against Sweets Mix, Tootsie Roll Industries, and the manufacturers of the machine, Key West Metal Fabricators, Inc., and Screw Conveyor Corporation. Since filing the lawsuit, plaintiffs have settled with defendants Key West Metal Fabricators, Inc., and Screw Conveyer Corporation.  On September 17, 1993, defendant Sweets Mix obtained summary judgment on the basis that it was one of Mr. Barraza's employers.  The strict liability counts against the defendant Tootsie Roll Industries were dismissed on May 22, 1995, as defendant had not been involved in selling the machine which caused Mr. Barraza's injuries.

Finally, on November 7, 1995, the trial court granted defendant Tootsie Roll Industries' summary judgment motion on the basis that it was an employer of the injured plaintiff.  It is from this order that plaintiffs appeal.

II. ANALYSIS OF ISSUES

A.  Summary judgment

The appellate review of a grant of summary judgment is 
de novo
.  
USG Corp v. Sterling Plumbing Group
, Inc.
, 247 Ill. App. 3d 316, 318, 617 N.E.2d 69 (1993).  Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1994).  The function of the appellate court in reviewing the grant of summary judgment is not
 to decide disputed issues of fact but rather to determine whether a factual dispute exists.  
Kerr v. Illinois Central R.R. Co.
, 283 Ill. App. 3d 574, 583, 670 N.E.2d 759 (1996). The court must construe the evidence strictly against the movant and liberally in favor of the opponent.  
Quality Lighting, Inc. v. Benjamin
, 227 Ill. App. 3d 880, 883, 592 N.E.2d 377 (1992).  Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt.  
Zekman v. Direct American Marketers, Inc.
, 286 Ill. App. 3d 462, 467, 675 N.E.2d 994 (1997).

B. The Workers' Compensation Act 

Section 1(a)(4) of the Workers' Compensation Act addresses the concept of "loaning" and "borrowing" employers.  The section provides that, regarding workers' compensation benefits on account of injuries to a borrowed employee, a covered borrowing employer subject to the Act is jointly and severally liable with a covered loaning employer.  820 ILCS 305/1(a)(4) (West 1994). In addition, the section specifically provides that employers in the business of furnishing employees to other covered employers and of paying the employees for their services to the other employers are to be deemed loaning employers.  820 ILCS 305/1(a)(4) (West 1994).

If covered under the Workers' Compensation Act, both borrowing employer and loaning employer share the immunity conferred by section 5(a) of the Act from any damage action, except an Industrial Commission claim, for work-related injuries to an employee.  
Saldana v. Wirtz Cartage Co.
, 74 Ill. 2d 379, 388, 385 N.E.2d 664 (1978).

C. The Borrowed Employment Relationship

It appears that the trial court is correct in its determination that the present case is unique and that no Illinois cases present the same factual scenario.  The trial court stated that because of the factual uniqueness of the case at bar, the existing case law has only limited applicability here.  We find that several cases do offer guidance, however, as far as the threshold determination which must be made for purposes of summary judgment; that is, whether there exists a material issue of fact.

In its decision, the trial court relied on 
Clark v. Industrial Comm'n
, 54 Ill. 2d 311, 297 N.E.2d 154 (1973), to determine whether an employer-employee relationship existed between plaintiff Mauricio Barraza and defendant Tootsie Roll Industries.  The 
Clark
 court said that no single facet of the relationship in question is determinative, but many factors must be considered, including the right to control the manner in which work is done, the method of payment, the right to discharge, the skill required in the work to be done, and the furnishing of tools, materials and equipment.  
Clark
, 54 Ill. 2d at 314.  It is significant, however, that the 
Clark
 court was making a determination of employment in the context of an independent contractor, a much different situation from that in the present case.  

The trial court applied the 
Clark
 analysis to the present case and found that there was an employer-employee relationship between Mr. Barraza and defendant Tootsie Roll Industries.  The court stated that the payment method was the "only one of the five factors" that did not directly support this relationship, but held that under the totality of the circumstances, Mr. Barraza did have an employer-employee relationship with Tootsie Roll Industries.  

The trial court cited 
Dildine v. Hunt Transportation, Inc.
, 196 Ill. App. 3d 392, 553 N.E.2d 801 (1990), as further supporting its holding.  
Dildine
 involved a plaintiff who was injured by making repairs on a Happy Cab automobile in a garage owned by Hunt Transportation.  Using the 
Clark
 analysis, the court in 
Dildine
 determined that the two entities were joint employers of the plaintiff.  Like 
Clark
, however, the 
Dildine
 case did not deal with a borrowed employee situation.

The trial court's reliance on the 
Clark
 and 
Dildine
 analysis is misplaced under Illinois case law.  Both cases deal with the existence of an employment relationship, but neither case specifically addresses a borrowed employee situation.  The question in the present case is not whether an employment relationship existed between Mr. Barraza and the defendant but rather whether a borrowed employment relationship existed in which Mr. Barraza was a loaned employee to defendant.  Under Illinois law, this determination requires a different analysis from that set forth in 
Clark
 or 
Dildine
.

In 
O'Loughlin v. Servicemaster Co. Ltd. Partnership
, 216 Ill. App. 3d 27, 34, 576 N.E.2d 196 (1991), the court specifically addressed the borrowed employment relationship.  Significantly, the 
O'Loughlin
 court found that an analysis of the factors outlined in 
Clark
 was not appropriate for determining a borrowed employment relationship.  The court stated that the 
Clark
 factors were enunciated for the purpose of determining whether an individual was an employee or an independent contractor, not for determining whether the individual was a borrowed employee.  
O'Loughlin
, 216 Ill. App. 3d at 34 n.2.   

The 
O'Loughlin
 court did, however, note that Illinois courts have identified several factors as bearing on whether a borrowed employment relationship exists, including an employer's control over a plaintiff, the power to discharge, whether a plaintiff consented or acquiesced to the alleged loan of services, the length of service, the identity of the party for whom the employee's services are being performed, and the manner of hiring. 
 
O'Loughlin
, 216 Ill. App. 3d at 34.

   Illinois courts have placed special emphasis on two of the factors and have created a two-part test for determining the existence of a borrowed employment relationship.  In 
Trenholm v. Edwin Cooper, Inc.
, 152 Ill. App. 3d 6, 7-8, 503 N.E.2d 1067 (1986), the court outlined this two-part test for determining whether a plaintiff was a "loaned employee" under the Workers' Compensation Act:  (1) whether the borrowing employer had the right to direct and control the manner in which plaintiff performed the work, and (2) whether there existed a contract of hire, either express or implied, between plaintiff and defendant.  See also 
A.J. Johnson Paving Co. v. Industrial Comm'n
, 82 Ill. 2d 341, 347-48, 412 N.E.2d 477 (1980).  Though not all cases addressing the existence of a borrowed employment relationship utilize a two-part analysis, they generally operate under the premise that these two factors are of special significance.  See 
O'Loughlin
, 216 Ill. App. 3d at 35-36; 
M&M Electric Co. v.
 
Industrial Comm'n
, 57 Ill. 2d 113, 116-17, 31 N.E.2d 161 (1974).

The record clearly supports a finding that Tootsie Roll had the right to direct and control the manner in which Mr. Barraza performed the work, consistent with the first
 prong of the 
Trenholm
 test.  A variety of evidence from several different sources supports this conclusion.

However, whether a contract or agreement of employment, expressed or implied, existed between Mr. Barraza and defendant Tootsie Roll Industries is much less evident.  The issue of whether an employee actually or impliedly consented to work for the borrowing employer is a threshold inquiry for the court.  
Crespo v. Weber Stephen Products Co.
, 275 Ill. App. 3d 638, 656 N.E.2d 154 (1995).  In the present case, t
he record is generally silent regarding the question of the express or implied consent of Mr. Barazza to work for Tootsie Roll Industries.  

While Illinois courts agree that the employee's express or implied acquiescence is essential to a borrowed or loaned employee relationship
, this consent may be implied in the context of a business which involves the hiring, procuring or furnishing of employees for other employers.  In 
Wasielewski v. Havi Corp.
, 188 Ill. App. 3d 340, 544 N.E.2d 116 (1989), the court stated that ordinarily the issue of loaned employee status is determined by inquiry into whether the second employer had the exclusive right to direct and control the manner in which the employee performed his work, and whether there existed a contract of hire between that employer and employee.  However, the court said such inquiry is unnecessary "where it otherwise appears that a substantial part of the first employer's business involved 'hiring, procuring or furnishing employees'" to other employers.  
Wasielewski
, 188 Ill. App. 3d at 342, quoting Ill. Rev. Stat. 1985, ch. 48, par. 138.1(a)(4).

In 
Evans v. Abbott Products, Inc.
, 150 Ill. App. 3d 845, 502 N.E.2d 341 (1986), the issue of a plaintiff's assent to a loaned employee relationship was addressed in a similar context.  The plaintiff was a temporary worker for Personnel Pool, which furnished temporary workers to various companies.  He was injured while working for the defendant and claimed the lawsuit was proper because there was no employer-employee relationship between him and the defendant, as he had not agreed to the relationship.  The court found that by working for a business that loaned its employees for work, the plaintiff had impliedly consented to the loaned employment relationship. 
Evans
, 150 Ill. App. 3d at 849.  The court further found that the plaintiff's consent was indicated from his acceptance of defendant Abbott's control and direction of his work activities.  
Evans
, 150 Ill. App. 3d at 849. 

Likewise, defendant Tootsie Roll Industries argues that in the present case, Mr. Barraza implicitly agreed to the borrowed employment relationship through his employment with Bee Groth, an employment service in the business of providing workers for other employers.  The defendant cites 
Wasielewski
 and 
Evans
 
in support of its assertion that there is no need to inquire as to whether  Mr. Barraza subjectively acknowledged a contract of hire with the borrowing employer and states Mr. Barraza is an employee of Tootsie Roll Industries as a matter of law.  

We agree with the 
Wasielewski
 and 
Evans
 
opinions that an employee impliedly consents to a borrowed employment situation by agreeing to work for an employment agency or service.  However, a careful review of the record raises questions not only about whether the the injured plaintiff was a borrowed employee of Tootsie Roll Industries, but also whether he was a loaned employee of Bee Groth.  The evidence is clear that a contract existed between Bee Groth and Sweets Mix and Tootsie Roll Industries to provide workers at the Sweets Mix factory and that Mr. Barraza was on Bee Groth's payroll.  However, Mr. Barraza testified he applied for work directly at the Sweets Mix factory and began work there the same day he applied.  In his deposition, he further testified he knew Bee Groth only as the source of his paycheck and visited the Bee Groth office only once, after the accident occurred.  This evidence, uncontroverted in the current record, creates a question of fact as to the nature of the employment relationship between Mr. Barraza and Bee Groth.   Bee Groth, under the facts presented to the trial court, neither provided, hired, procured nor furnished Mr. Barraza to Sweets Mix or Tootsie Roll Industries.  

Additionally Bee Groth, a third-party defendant in this lawsuit, argued for summary judgment against third-party plaintiff Key West on the basis that although Bee Groth was under a contract with Sweets Mix and Tootsie Roll Industries to provide laborers for the Sweets Mix plant, Mr. Barraza did not fall under this employment relationship.  In support of its motion for summary judgment, Bee Groth argued that, unlike the employees "loaned" to Sweets Mix and Tootsie Roll, Mr. Barraza applied for work directly to the Sweets Mix Company at its facility and was hired by Sweets Mix.

Moreover, if indeed Mr. Barraza is not a loaned employee of Bee Groth, or at least not a loaned employee pursuant to Bee Groth's contract with Sweets Mix and Tootsie Roll, then we cannot say he impliedly consented to a borrowed employment relationship under 
Wasielewski
 and 
Evans
.

     Whether Mr. Barraza agreed to work for the employment agency Bee Groth and thereby impliedly consented to a borrowed employment relationship with Tootsie Roll Industries is a factual question unanswered in the record.  While Bee Groth indicates it provided workers for the Sweets Mix factory, Mr. Barraza was not hired by Bee Groth, nor was he aware he was working for Bee Groth.  He was hired directly at the Sweets Mix factory and believed he worked for Sweets Mix.

Further, there is a question of fact as to whether Mr. Barraza knew he was working for Tootsie Roll Industries as a loaned employee.  Consent to the loaned employment relationship can be implied by an employee's acceptance of the control and direction of his work.  
Evans
, 150 Ill. App. 3d at 849
.  However, in this case, there is a factual dispute as to whether Mr. Barraza knew of or accepted the control and direction of his work by Tootsie Roll Industries and thereby consented to the loaned employment relationship. 

There are a number of factual questions surrounding the nature of Mr. Barraza's relationship with Bee Groth and Tootsie Roll Industries that remain unanswered by the record.  Accordingly, we find that a factual dispute exists presenting triable questions of fact which demand further inquiry.

D. A Question of Fact

In several Illinois cases, the determination of whether an employee is a "loaned employee" for purposes of the Workers' Compensation Act is considered a question of fact, to be determined by the jury or trier of fact.

In 
Emma v. Norris
, 130 Ill. App. 2d 653, 264 N.E.2d 573 (1970), summary judgment was reversed because a factual issue existed as to whether a hired management company had become the plaintiff's employer.  In addressing whether a borrowed employment relationship existed, the 
Emma
 court questioned whether a consensual relationship existed between the management company and the plaintiff.  
Emma
, 130 Ill. App. at 657.  There was also some question as to whether the management company had authority to hire and discharge.  The court found that these issues of consent and authority were too murky for summary judgment and needed to go before a jury.  
Emma
, 130 Ill. App. 3d at 658.  

 In 
A.J. Johnson Paving Co. 
v. Industrial Comm'n
, 82 Ill. 2d 341, 412 N.E.2d 477 (1980), the court found that the existence of a "loaned servant" situation is generally a question of fact to be determined by the trier of fact; in that case, by the Industrial Commission.  The plaintiff, Johnson Paving, contended that since the evidence was not in dispute, the question became one of law which the court could determine.  
A.J. Johnson Paving
, 82 Ill. 2d at 348.  The court responded that although the facts may be undisputed, if more than one inference can reasonably be drawn from these facts, the question must remain one of fact and not one of law.  
A.J. Johnson Paving
, 82 Ill. 2d at 348-49.  See also 
Willfong v. Dean Evans Co.
, 287 Ill. App. 3d 1099, 679 N.E.2d 1252 (1997).

The 
court in 
Trenholm
, 152 Ill. App. 3d 6, 503 N.E. 2d 1067, held that the determinations of whether an employer had the right to control an employee and whether the employee consented to the relationship were "questions of fact for the jury, which must weigh such factors as the matter of hiring, the mode of payment, the right to discharge, and the manner of direction."  
Trenholm
, 152 Ill. App. 3d at 8.  See also 
Palomar v. Metropolitan Sanitary District of Greater Chicago
, 225 Ill. App. 3d 182, 189, 587 N.E.2d 1067 (1992); 
Saldana v. Wirtz Cartage Co.
, 74 Ill. 2d 379, 389-90, 385 N.E.2d 664 (1978). 

The function of the appellate court in reviewing the grant of summary judgment is not to decide disputed issues of fact, but rather to determine whether a factual dispute exists.  
Kerr v.

Illinois Central R.R. Co.
, 283 Ill. App. 3d 574, 583, 670 N.E.2d 759 (1996).  In this case, the trial court, when analyzing the facts which define an employer-employee relationship, noted that the method of payment was the only one of several factors that did not directly support finding an employer-employee relationship.

However, we believe in this case that there are additional questions surrounding the other factors that define the employer-employee relationship which create a factual dispute.

 There is a question of fact as to whether plaintiff Mauricio Barraza agreed to work for the employment agency Bee Groth; there are further questions regarding the precise nature of his relationship with the employment agency Bee Groth. It is also unclear whether Mr. Barraza accepted an employment assignment with Tootsie Roll Industries by virtue of his relationship with Bee Groth, which presents another factual question.  There are further questions of fact as to whether there was a contract of hire either express or implied between Mr. Barraza and defendant Tootsie Roll Industries, and whether he knew he was under the direction and control of Tootsie Roll Industries.  Finally, there are questions of fact as to whether Mr. Barraza accepted the direction and control of Tootsie Roll Industries, and if such acceptance factually existed, whether he thereby agreed to the loaned employee relationship.  We believe these disputed questions of fact are more appropriately addressed by the trier of fact, particularly in light of the unique fact situation presented by this case.

There is ample case law dealing with the borrowed employment relationship; however, there are no cases that deal with the complex fact pattern at issue here.  Clearly, defendant Tootsie Roll Industries is removed from the traditional loaned employee analysis.  Despite the voluminous trial record in this case, the nature of the relationship between Tootsie Roll and plaintiff Mauricio Barraza remains factually unclear and must be resolved by the trier of fact.  

III. CONCLUSION

The issue presented to the court in this case is whether the defendant Tootsie Roll Industries is entitled to summary judgement on the basis that it is an employer of the injured plaintiff.  Though it is clear that Tootsie Roll exercised control and direction over Mr. Barraza's work activities, there are unanswered questions about his consent to the loaned employment relationship with Tootsie Roll.

Defendant argues that Mr. Barraza implicitly agreed to the loaned relationship by accepting employment through the Bee Groth employment service.  Defendant further argues that this implied consent eliminates the need to determine whether he subjectively acknowledged a contract of hire with the borrowing employer.  Though defendant argues consent is implied based on the 
Wasielewski
 and 
Evans
 line of cases, the disputed facts in this case create a factual question as to whether Mr. Barraza accepted employment through Bee Groth and thereby implicitly agreed to the loaned employee relationship with Tootsie Roll Industries.  Without a clear answer to this question we cannot uphold the trial court's grant of summary judgment. Additionally, we believe Illinois case law indicates such questions are more appropriately addressed by the trier of fact.

For the foregoing reasons, the decision of the trial court granting the defendant's motion for summary judgment is reversed.  This cause is remanded for further consideration consistent with this opinion.

Reversed and remanded.

RAKOWSKI and TULLY, JJ., concur.