ANTONIO CRESPO, Plaintiff-Appellant, v. WEBER STEPHEN PRODUCTS COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 1—94—3221

Opinion filed September 29, 1995.

James W. O'Connor, of Chicago (Joy L. Sparling, of counsel), for appellant.

Shelmerdeane A. Miller and John R. Fearon, both of Law Offices of Shelmerdeane A. Miller, of Chicago, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Antonio Crespo (plaintiff) brought an action against defendant Weber Stephen, Inc. (Weber), for injuries sustained when his hand was crushed in a punch press owned and operated by Weber. Weber filed a section 2—619 (735 ILCS 5/2—619 (West 1992)) motion to dismiss alleging that plaintiff was a "loaned employee" and thus subject to the exclusive remedy provisions of section 5(a) of the Workers' Compensation Act (Act) (820 ILCS 305/5(a) (West 1992)). The trial court granted Weber's motion.

The issue before this court is whether plaintiff was Weber's

"loaned employee" and therefore subject to the provisions of the Workers' Compensation Act.

Plaintiff is a 33-year-old manual laborer of Hispanic descent who claims to neither speak, read nor understand English. On February 12, 1992, plaintiff began working for Handy Andy Industrial Services (Handy Andy). Plaintiff reported to Handy Andy headquarters each day at 6 a.m., where he and other employees would wait to see if they were selected by a Handy Andy representative to work that particular day. If chosen to work, plaintiff would be transported to and from a particular jobsite on a bus or van provided by Handy Andy. Plaintiff was paid an hourly wage by Handy Andy, after deducting income tax withheld and FICA.

Plaintiff followed this routine for approximately four weeks, working on several different jobsites. Plaintiff admits being told by Handy Andy that he was to follow the instructions of whomever was in charge of the various jobsites where he worked, although he claims he was never specifically informed by Handy Andy personnel that he was anything other than a Handy Andy employee.

On March 16, 1992, after reporting to Handy Andy, plaintiff was transported to Weber's work facility. This was the first day he was scheduled to work at Weber. Shortly after arriving at Weber, plaintiff slipped on oil that had accumulated near a punch press. As he fell, plaintiff stepped on a foot pedal, activating the press punch. Plaintiff reached out to regain his balance, unfortunately placing his hand under the now running press, which crushed his right hand. Plaintiff was admitted to the emergency room of Northwest Community Hospital, where his index and little fingers were amputated.

Plaintiff filed a worker's compensation claim against Handy Andy which was settled for $10,832.66. Plaintiff did not file a worker's compensation claim against Weber, nor was Weber included in the settlement agreement between plaintiff and Handy Andy.

On March 1, 1993, plaintiff filed a negligence action against Weber alleging that Weber failed to properly train him in the use of the press punch, failed to utilize guarding devices on the punch press, allowed oil to accumulate near a work station, and operated a defective and dangerous machine. Weber filed a motion to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure. (735 ILCS 5/2—619 (West 1992).) The motion included the affidavit of Weber's vice-president, Leonard Gryn, and stated that Handy Andy was a firm that "provided temporary labor services to its clients, of which Weber was one." Plaintiff challenged the sufficiency of the affidavit, acknowledging that the affiant might be in a position to speak for Weber, but that there was no showing that he was in a position to as-

sess the kind of business in which Handy Andy engaged. In his reply to Weber's motion, plaintiff stated: "Handy Andy is a company which hires employees who report to its facility on a daily basis, delivers those employees to work sites in the Chicago area, returns its employees and pays them an hourly wage each Friday."

The motion to dismiss was granted by the trial court, presumably on a finding that, as a matter of law, plaintiff was a loaned employee subject to the exclusive remedy provided by section 5(a) of the Workers' Compensation Act. Plaintiff appeals the trial court's order granting Weber's motion to dismiss, contending issues of material fact exist as to whether he met the definition of a "loaned employee."

■ The standard of review when considering orders on motions to dismiss is *de novo*. (*Toombs v. City of Champaign* (1993), 245 Ill. App. 3d 580, 615 N.E.2d 50.) Under Illinois' loaned employee doctrine, an employee in the general employment of one person may be loaned to another for the performance of special work and become the employee of the person to whom he is loaned. (*A.J. Johnson Paving Co. v. Industrial Comm'n* (1980), 82 Ill. 2d 341, 412 N.E.2d 477.) Whether such a constructive transfer of employment occurs depends on whether the borrowing employer has the right to direct and control the employee with respect to the work performed and whether an employment contract, express or implied, existed between the employee and the borrowing employer. *A.J. Johnson Paving*, 82 Ill. 2d at 347.

■ The primary factor in determining a borrowed-employment relationship is the right to control the manner and direction of the subject employee's work. (*O'Loughlin v. ServiceMaster Co. Ltd. Partnership* (1991), 216 Ill. App. 3d 27, 35, 576 N.E.2d 196; *Mosley v. Northwestern Steel & Wire Co.* (1979), 76 Ill. App. 3d 710, 394 N.E.2d 1230.) Other factors to be considered include the manner of hiring, the mode of payment, the nature of the work, the manner of direction and supervision of work, and the right to discharge. (*O'Loughlin*, 216 Ill. App. 3d at 35; *Mosley*, 76 Ill. App. 3d at 719.) Additionally, the Illinois Supreme Court recognizes the threshold inquiry whether the employee actually or impliedly consented to work for the borrowing employer. (*A.J. Johnson Paving*, 82 Ill. 2d at 348.) Implied consent exists where the employee is aware that the borrowing employer "is in charge" or generally controls the employee's performance. The employee's acceptance of the borrowing employer's direction shows his acquiescence to the employment situation. *A.J. Johnson Paving*, 82 Ill. 2d at 348; *Evans v. Abbott Products, Inc.* (1986), 150 Ill. App. 3d 845, 849, 502 N.E.2d 341.

We note initially that plaintiff's consent to work for Weber was

demonstrated by his appearance at the Weber facility and his response to the instructions of the Weber employee supervising the facility. There were no Handy Andy employees present at the facility, and Weber was plaintiff's fifth "temporary" work assignment during his four-week tenure at Handy Andy, suggesting that plaintiff was well aware of the nature of his employment despite the absence in the record of a written contract establishing plaintiff's consent to work for Weber. This case is factually similar to *Evans,* where the employee was furnished to the defendant by a company which loaned employees to other businesses on a temporary basis, and the court determined that the employee, by making himself available for such work, impliedly consented to the loaned-employee relationship. *Evans,* 150 Ill. App. 3d at 848.

■ Relying on a second district case, *Wasielewski v. Havi Corp.* (1989), 188 Ill. App. 3d 340, 544 N.E.2d 116, Weber seeks to reduce the analysis of plaintiff's relationship with Weber to a simple syllogism. As Weber notes, section 1(a)(4) of the Workers' Compensation Act provides that a lending employer shall be liable for workers' compensation benefits in the event the borrowing employer fails to provide appropriate benefits. To define lending employers, the section further provides:

> "An employer whose business or enterprise or a substantial part thereof consists of hiring, procuring or furnishing employees to or for other employers operating under and subject to the provisions of this Act for the performance of the work of such other employers and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers *shall be deemed a loaning employer within the meaning and provisions of this Section.*" 820 ILCS 305/1(a)(4) (West 1992). (Emphasis added.)

*Wasielewski* holds that where the lending employer meets the statutory definition, the other employer must automatically be a borrowing employer, and the need for any factual analysis is unnecessary. We reject this syllogistic approach and still would require an examination of the relationship between plaintiff and Weber. (See *Palomar v. Metropolitan Sanitary District of Greater Chicago* (1992), 225 Ill. App. 3d 182, 587 N.E.2d 1067.) The statutory definition of a "loaning employer" refers to the paragraph establishing the secondary liability of the lending employer. The purpose was to relieve an employee from having to establish the factual basis of employment between the employee and the loaning employer. It was not meant to establish or define who shall be a borrowing employer. Resolution of that issue is left to the traditional factors that define an employment relationship.

■ The record reveals evidence which supports the trial court's finding that Handy Andy is a "loaning employer" and that Weber is a borrowing employer. Plaintiff's affidavit states that plaintiff reported to Handy Andy each morning, was driven to and from various jobsites by a Handy Andy employee, and was paid each Friday by Handy Andy. He understood that he was to follow the direction of the several companies that made use of his time and, although he states that he was not informed "that (he) could be fired or disciplined by persons at those jobsites," he certainly realized that he had to do the work in accordance with their requirements. Like the plaintiff in *Evans*, he impliedly consented to the arrangement with Weber.

By this conclusion, we do not conflict with *O'Loughlin v. Service-Master*. In that scaffolding act case the plaintiff was unaware of the relationship between borrower and lending employers and had every reason to believe that he was employed by the school district which had provided for its maintenance requirements with an agreement with defendant. Further, we believe that the factors for determining a loaned employment relationship laid down in *Palomar* have been met. *Palomar*, 225 Ill. App. 3d at 189-90.

Because the facts, scant as they are, lead us to conclude that defendant is a borrowing employer, we find that plaintiff was subject to the exclusive remedy provided by the Workers' Compensation Act and therefore affirm the trial court's order granting Weber's motion to dismiss.

Affirmed.

RIZZI and CERDA, JJ., concur.