16 August 2000

NO. 4-00-0064

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

VANESSA CHANEY, ELLA CHANEY, ELIZABETH ) Appeal from

CHANEY, and TERRANCE CHANEY, Minors, by ) Circuit Court of

and Through Their Parent, VANESSA ) Sangamon County

CHANEY, ) No. 98L42

Plaintiffs-Appellants, )

)

YETTER MANUFACTURING CO., ) Honorable

Defendant-Appellee. ) Robert J. Eggers,

) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE COOK delivered the opinion of the

court:

Plaintiffs, Vanessa Chaney, Ella Chaney, Elizabeth Chaney, and Terrance Chaney, through their parent, Vanessa Chaney, filed this tort action against Yetter Manufacturing Company (Yetter) seeking damages for injuries that Vanessa Chaney (Chaney) sustained in a work-related accident.  On February 14, 1996, Chaney's right hand was severed at the wrist when her glove was caught in a rotating drill at the Yetter plant.  Chaney was employed by Genie Temporary and Executive Services (Genie) and, on the date in question, was assigned by Genie to work at Yetter's plant.  Chaney previously recovered workers' compensa

tion benefits from Genie relating to the accident.    

Genie supplied Yetter with temporary workers during peak demand periods.  In exchange, Yetter paid Genie the employ

ees' hourly wage plus a percentage fee.  As is common with temporary agencies, Genie handled its employees' payroll, tax withholding and reporting, and insurance.  Genie also provided workers' compensation coverage for its employees.  In fact, the contract between Genie and Yetter specifically provided:

"(c) Supplier [(Genie)] is also responsible 

for [w]orkers' [c]ompensation and [g]eneral 

[l]iability insurance coverage for all tem-

porary employees, and will furnish Client 

[(Yetter)] a [c]ertificate of [i]nsurance as 

evidence of inforce coverage at all times 

during this agreement.  

* * *

(e) The Supplier [(Genie)] hereby indem-

nifies and holds harmless Client [(Yetter)] 

from any judgment, finding, or assessment of 

liability under the Workers' Compensation 

Act or the laws of Illinois for injuries 

allegedly suffered by a temporary employee."  

In response to plaintiffs' complaint, Yetter filed several affirmative defenses, one of which raised the exclusive remedy provisions of the Workers' Compensation Act (Act) (820 ILCS 305/5(a) (West 1996) (employee has no common law right to recover damages other than those provided by the Act)).  Yetter contended that it was a "borrowing employer" and Chaney was a "loaned employee" at the time of the accident and, as such, Yetter was entitled to the protections of the Act's exclusive remedy provi

sion.  820 ILCS 305/1(a)(4) (West 1996) (borrowing employers covered by Act).  Yetter subsequently filed a motion for summary judgment on this same basis.  The circuit court granted Yetter's motion in a docket entry order.  Chaney's motion for reconsidera

tion was denied, and the court specifically ruled that Genie (as the loaning employer) and Yetter (as the borrowing employer) were protected by the Act's exclusive remedy provisions.  On appeal, Chaney argues that summary judgment was improper.

The Act is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment.  
Meerbrey v. Marshall Field & Co.
, 139 Ill. 2d 455, 462, 564 N.E.2d 1222, 1225 (1990).  Accordingly, the Act imposes liability without fault upon the employer and, in return, prohibits common-law suits by employees against the employer.  The exclusive remedy provision "'is part of the 
quid
 
pro
 
quo
 in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts.'"  
Meerbrey
, 139 Ill. 2d at 462, 564 N.E.2d at 1225, quoting 2A A. Larson, Law of Workmen's Compensation §65.11 (1988).  

Section 5(a) of the Act provides that employees have no common-law or statutory right to recover damages from their employer other than the compensation provided under the Act.  820 ILCS 305/5(a) (West 1996).  Section 1(a)(4) of the Act recognizes the concept of "loaning" and "borrowing" employers and outlines the implications of each status.

"Where an employer operating under and subject 

to the provisions of this Act loans an em-

ployee to another such employer and such loaned employee sustains a compensable accidental 

injury in the employment of such borrowing em

ployer and where such borrowing employer 

does not provide or pay the benefits or pay-

ments due such injured employee, such loaning employer is liable to provide or pay all bene-

fits or payments due such employee under 

this Act and as to such employee the liability 

of such loaning and borrowing employers is 

joint and several, provided that such loaning 

employer is in the absence of agreement to 

the contrary entitled to receive from such 

borrowing employer full reimbursement for all 

sums paid or incurred pursuant to this para-

graph together with reasonable attorneys' 

fees and expenses ***."  820 ILCS 305/1(a)(4) 

(West 1996).

Thus, with respect to an injured employee, the liabil

ity of the loaning and borrowing employers is joint and several; as between employers, the borrowing employer is primarily liable and the loaning employer secondarily liable, the latter being required to pay only when the borrowing employer fails to do so, and is then entitled to reimbursement from the borrowing em

ployer.  
Fort Dearborn Cartage Co. ex rel. Chubb & Son, Inc. v. Rooks Transfer Co.
, 136 Ill. App. 3d 371, 374, 483 N.E.2d 618, 619 (1985).  The loaning employer's right to reimbursement, however, may be waived by an agreement between the respective employers.  
Fort Dearborn
, 136 Ill. App. 3d at 374, 483 N.E.2d at 619-20.  

Section 1(a)(4) of the Act also provides that an employee, like Genie, that is in the business of furnishing employees to other employers "for the performance of the work of such other employers and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers 
shall
 
be
 
deemed
 
a
 
loaning
 
employer
 within the meaning and provisions of this [s]ection."  (Emphasis added.)  820 ILCS 305/1(a)(4) (West 1996).

Clearly, Genie qualifies as a "loaning employer" under the Act.  The issue in this case is whether Chaney's status as a loaned employee was properly decided as a matter of law.   Although the existence of a loaned-employee status is generally a question of fact, it becomes a question of law where the facts are undisputed and capable of only one inference.  
Willfong v. Dean Evans Co.
, 287 Ill. App. 3d 1099, 1101, 679 N.E.2d 1252, 1254 (1997) (affirming summary judgment after finding the plain

tiff was loaned employee).  After conducting a 
de
 
novo
 review of the record, we affirm the circuit court's grant of summary judgment.

The Supreme Court of Illinois has held that two factors determine whether a loaned-employee relationship exists:  (1) whether the borrowing employer had the right to direct and control the manner in which the plaintiff performed the work; and (2) whether a contract of hire, either express or implied, existed between the employee and the borrowing employer.  Of these two factors, the right to control is primary.  
A.J. Johnson Paving Co. v. Industrial Comm'n
, 82 Ill. 2d 341, 347-48, 412 N.E.2d 477, 480-81 (1980)
. 

Whether an employer has "control" over an employee's work depends upon the character of the supervision of the work done, the manner of direction of the employee, the right to discharge, the manner of hiring, and the mode of payment.  
Freeman v. Augustine's Inc.
, 46 Ill. App. 3d 230, 234, 360 N.E.2d 1245, 1247-48 (1977).           

Yetter argues that we need not address these issues.  Instead, Yetter asserts that, because Genie is a loaning em

ployer, it must follow that Chaney was a loaned employee and Yetter was a borrowing employer under the Act.  In 
Wasielewski v. Havi Corp.
, 188 Ill. App. 3d 340, 544 N.E.2d 116 (1989), the Third District affirmed summary judgment in favor of the borrow

ing employer on this same issue, stating:

"Ordinarily, the issue of loaned[-]employee 

status is determined by inquiry into whether 

the second employer had the exclusive right to 

direct and control the manner in which the em

ployee performed his work and whether there 

existed a contract of hire between that em-

ployer and employee.  [Citations.]  Such 

inquiry is unnecessary, however, where it 

otherwise appears that a substantial part of 

the first employer's business involves 

'hiring, procuring or furnishing employees 

to or for other employers operating under 

and subject to the provisions of [the Act] 

***.' [Citation.]  Under such circumstances 

the [Act] provides that such an employer 

'shall be deemed a loaning employer within the meaning and provisions of' the Act."  
Wasielew-

ski
, 188 Ill. App. 3d at 342, 544 N.E.2d at 

117-18.

Wasielewski
 holds that where the temporary employment agency meets the statutory definition of a loaning employer, the other employer, like Yetter, must automatically be a borrowing em

ployer, and the need for any factual analysis is unnecessary. 

The First District disagrees with 
Wasielewski
, stating, "[w]e reject this syllogistic approach and still would require an examination of the relationship between [alleged borrowing employer] and [employee]."  
Crespo v. Weber Stephen Products Co.
, 275 Ill. App. 3d 638, 642, 656 N.E.2d 154, 157 (1995).  
Crespo
 stated that the purpose of the statutory definition of a "loaning employer" was to relieve an employee from having to establish the factual basis of employment between the employee and the loaning employer.  
Crespo
, 275 Ill. App. 3d at 642, 656 N.E.2d at 157.  By designating temporary employment agencies as "loaning employ

ers," the Act merely establishes another party from whom the employee can seek workers' compensation recovery.  820 ILCS 305/1(a)(4) (West 1996) (establishing secondary liability for loaning employer).  The definition of a "loaning employer" was not meant to establish or define who shall be a borrowing em

ployer.  
Crespo
, 275 Ill. App. 3d at 642, 656 N.E.2d at 157. 

We agree that the statutory definition of a "loaning employer" does not establish or define who shall be considered a "borrowing employer."  
Crespo
, 275 Ill. App. 3d at 642, 656 N.E.2d at 157.  While the holding in 
Wasielewski
 (if there is a loaning employer, there must also be a corresponding borrowing employer) seems logical, we recognize that fact patterns may arise which would make such a rigid interpretation inappropriate.  See 
Barraza v. Tootsie Roll Industries, Inc.
, 294 Ill. App. 3d 539, 546-47, 690 N.E.2d 612, 616-17 (1997) (employee that applied at Tootsie Roll and began work that same day was unaware that he was actually employed through a temporary employment agency).  Therefore, we decline to adopt 
Wasielewski
 and will proceed to examine the traditional factors that define the loaned-employee and borrowing-employer relationship.

I. CONTROL FACTORS

In Chaney's affidavit, she admits that "[w]hen [she] arrived at Yetter, [she] was instructed as to the particular task function and then was placed on that task."  Chaney further stated that "[a]fter approximately one week at Yetter, Yetter asked [her] to operate a drill press, a different task to which [she] agreed" and that "[l]ater Yetter asked [her] to operate a larger drill press, a different task to which [she] initially objected but then agreed."  Nothing indicates that any Genie representative was involved with or consulted regarding any task that Chaney performed at Yetter.  These facts are undisputed and lead to only one conclusion.  Yetter and its representatives controlled Chaney's work activities while she was at the Yetter plant.  Yetter supervised her work and directed her work activi

ties.    

It is also evident that Yetter had the equivalent of a right to dismiss Chaney from employment at Yetter.  Clearly, Yetter could not discharge Chaney from Genie's employment, but it is undisputed that Yetter could dismiss Chaney from service at its own plant.  Chaney would then report back to Genie.  This power to dismiss is sufficient for purposes of the control test.  
Russell v. PPG Industries, Inc.
, 953 F.2d 326, 331 (7th Cir. 1992), citing 
Evans v. Abbott Products, Inc.
, 150 Ill. App. 3d 845, 849, 502 N.E.2d 341, 344 (1986) (authority to dismiss loaned employee from temporary job and direct him back to loaning employer satisfied discharge element).

Finally, the record indicates that Chaney was paid by Genie, not Yetter.  While this factor weighs against Yetter, it is well established that "[t]he mere fact that the employee does not receive his wages from the [borrowing] employer will not defeat the finding of a loaned-employee situation."  
A.J. John

son
, 82 Ill. 2d at 349, 412 N.E.2d at 481.  This method of compensation is so common with temporary employment agencies that it is of little import in the analysis of whether Yetter "con

trolled" Chaney's work performance for purposes of the Act.  

Based upon these facts, we conclude that Yetter con

trolled Chaney as an employee while she was at the Yetter plant.  Thus, we must proceed to the second inquiry and determine whether there was a contract or agreement of employment between Chaney and Yetter.  

II. CONTRACT OR AGREEMENT OF EMPLOYMENT

While Illinois courts agree that the employee's express or implied acquiescence is essential to a borrowed- or loaned- employee relationship, the employee's consent may be implied in the context of a business like a temporary employment agency.  
Barraza
, 294 Ill. App. 3d at 546, 690 N.E.2d at 616.  Here, there is no dispute that Chaney knew she was working for Yetter, but through Genie.  We find that Chaney impliedly agreed to the loaned-employee relationship.

As a final matter, we address plaintiffs' argument that Yetter should be subject to common-law tort liability in this suit because it was 
not
 liable under the Act.  Plaintiffs cite 
Lachona v. Industrial Comm'n
, 87 Ill. 2d 208, 429 N.E.2d 858 (1981), and assert that the agreement whereby Genie is res-

ponsibile for workers' compensation claims and agreed to hold Yetter harmless from any injury-related claims relieved Yetter from liability and, in turn, the protection of the exclusive remedy provision under the Act.  820 ILCS 305/5(a) (West 1996).  Contrary to the plaintiffs' assertions, 
Lachona
 does not hold that a borrowing employer can escape workers' compensation liability (
vis
 
a
 
vis
 the employee) through an indemnification agreement with the loaning employer.  Instead, 
Lachona
 was limited to the facts before the court and holds only that a respondent in a workers' compensation action may withdraw from the action where the remaining respondent is contractually obligated to indemnify the withdrawing party.  To adopt plain

tiffs' argument would require us to ignore the Act's 
explicit provisions making borrowing and loaning employers jointly and severally liable to the employee.  820 ILCS 305/1(a)(4) (West 1996).  We decline to apply 
Lachona
 in that manner.  

The Act establishes a system to help ensure that the employee will recover benefits in a loaned-employee scenario.  820 ILCS 305/1(a)(4) (West 1996).  If the borrowing employer fails to pay the employee's claim, the loaning employer must pay the employee but is granted a right to seek reimbursement from the borrowing employer. 820 ILCS 305/1(a)(4) (West 1996).  Despite the indemnification agreement between Yetter and Genie waiving Genie's right to indemnification, Yetter was still primarily liable for Chaney's injuries under the Act.  
A.J. Johnson
, 82 Ill. 2d at 351, 412 N.E.2d at 482. 

Under the facts presented here, we find that, for purposes of the Act, Chaney was a loaned employee and that Yetter constituted a borrowing employer.  The material facts relating to our conclusion are capable of only one inference.  Since Yetter qualifies as a borrowing employer, plaintiffs are precluded from bringing a civil action against Yetter pursuant to section 5(a) of the Act.  The entry of summary judgment is affirmed.

Affirmed.

STEIGMANN and MYERSCOUGH, JJ., concur.