FIRST DIVISION
June 4, 2007

1-06-2729

| | | |
|---|---|---|
| MARSHALL K. BEHRENS, | ) | |
| | ) | |
| Plaintiff-Appellant | ) | Appeal from |
| | ) | the Circuit Court |
| v. | ) | of Cook County |
| | ) | |
| CALIFORNIA CARTAGE COMPANY, INC., | ) | 05 L 08758 |
| | ) | |
| Defendant | ) | Honorable |
| | ) | Donald J. Suriano, |
| (Staffing Resources, Inc., | ) | Judge Presiding |
| | ) | |
| Defendant-Appellee). | ) | |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

This action for damages for personal injuries ended in summary judgment for the defendant temporary employment agency. The circuit court determined that the doctrine of *respondeat superior* shifted liability for the alleged negligence of a temporary employee from the defendant temporary employment agency that hired her to the warehouse which had temporarily borrowed and exercised control over her. On appeal, the plaintiff contends that under the scope-of-employment test, liability properly remains with the temporary employment agency.

Summary judgment is proper where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004); *Alms v. Baum*, 343 Ill. App. 3d 67, 71, 796 N.E.2d 1123, 1126-27 (2003). In appeals from summary judgment rulings, our review is *de novo*. *Alms*, 343 Ill. App. 3d at 71, 796 N.E.2d

1-06-2729

at 1127.

Defendant California Cartage Company, Inc. is a company headquartered in southern California which maintains a warehouse and freight distribution facility at 27143 South Baseline Road, in Elwood, Illinois (California Cartage or warehouse). On November 17, 2004, the warehouse staff included plaintiff-appellant Marshall K. Behrens, who was an experienced truck driver, and Cynthia Smith, who was working in the dispatching office instructing drivers such as Behrens to hook up and move certain shipping containers within the facility. Behrens was employed by People Link Staffing Solutions, Inc., a Manteno, Illinois, temporary employment agency which is not a party to this action (People Link), and Smith was employed by defendant-appellee Staffing Resources, Inc., which is a Matteson, Illinois, temporary employment agency (Staffing Resources). Smith told Behrens to relocate a container which she said was empty when it was actually fullyloaded and weighed approximately 50,000 pounds. Behrens did not follow the procedures necessary for moving a full shipping container, and when he backed his truck into it, he sustained neck and back injuries which required surgical repair and are considered permanent.

In 2005, Behrens filed a claim for worker's compensation benefits from his temporary employment agency. See 820 ILCS 305/1 *et seq*. (West 2004). In addition, on August 10, 2005, Behrens filed this lawsuit, directing one count at the warehouse and one count at Smith's temporary employment agency. Behrens alleged that the warehouse and Smith's temporary employment agency, through their employees and agents, were careless and negligent in that they failed to use an effective system to determine whether containers were empty or full, failed to

2

inspect the container at issue to determine its status, and failed to convey correct information regarding its status to Behrens. Behrens sought in excess of $50,000 from each defendant.

The warehouse, which is not a party here, filed a motion under section 2-619 motion of the Code of Civil Procedure to dismiss count I of Behrens' pleading, arguing that for purposes of the Workers' Compensation Act, the warehouse was Behrens' "employer" and, therefore, immunized from his common law tort claim by the exclusivity provision of the statute. 735 ILCS 5/2-619(a)(1) (West 2004); 820 ILCS 305/5(a) (West 2004). The Workers' Compensation Act "imposes liability without fault upon the employer and, in return, prohibits common-law suits by employees against the employer." *Chaney v. Yetter Manufacturing Co.*, 315 Ill. App. 3d 823, 826, 734 N.E.2d 1028, 1030 (2000). The Act's exclusivity provision states that an injured employee retains "[n]o common law or statutory right to recover damages from the employer *** for injury *** sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided." 820 ILCS 305/5(a) (West 2004). The exclusivity provision has been applied when an employee is loaned from one employer to another employer, such as when a temporary employment agency sends its employee out on assignment. See, *e.g.*, *Chaney*, 315 Ill. App. 3d 823, 734 N.E.2d 1028. The loaning employer and the borrowing employer are considered jointly and severally liable for the injured worker's benefits, with the borrowing employer being primarily liable and the loaning employer being secondarily liable. *Chaney*, 315 Ill. App. 3d at 826, 734 N.E.2d at 1030 (discussing section 1(a)(4) of the Workers' Compensation Act (820 ILCS 305/1(a)(4) (West 1994))). However, the loaning employer is required to pay benefits only when the borrowing employer fails to do so, and then may claim

full reimbursement from the borrowing employer. *Chaney*, 315 Ill. App. 3d at 826-27, 734 N.E.2d at 1030-31. Nevertheless, it is permissible for the two employers to reach a contrary agreement (*Chaney*, 315 Ill. App. 3d at 827, 734 N.E.2d at 1031), which is what the warehouse and Behren's temporary employment agency agreed to do. In its motion to dismiss, the warehouse argued the two-part borrowed- or loaned-employee test was satisfied between the warehouse and Behrens because the warehouse had (1) the right to direct and control Behrens' work activities and the manner in which he performed his work, at least on a temporary basis and the right to remove him from the temporary assignment and send him back to People Link, and (2) Behrens had given implied consent to a borrowed- or loaned-employee relationship. See *Chaney*, 315 Ill. App. 3d at 827, 734 N.E.2d at 1031. The warehouse concluded its employer/borrowed-employee relationship with Behrens meant his only recourse was through the workers' compensation program. The trial court found this argument persuasive and dismissed the warehouse from Behrens' action. Due to the agreement between the warehouse and Behren's temporary agency, the benefits that the warehouse was obligated to pay to Behrens were actually paid by his temporary employment agency.

In the motion on appeal, Smith's temporary employment agency, Staffing Resources, presented a similar argument as the basis for summary judgment against Behrens' remaining claim. Staffing Resources argued that if an employee is a borrowed servant at the time of an allegedly tortious act, the loaning employer can escape liability for the conduct, because the employer who has borrowed the employee has assumed liability in *respondeat superior* for the actions of the employee. "Under the doctrine of *respondeat superior,* an employer can be held

vicariously liable for the tortious acts of its employees [citation], including negligent, wilful, malicious, or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer." *Alms*, 343 Ill. App. 3d at 71, 796 N.E.2d at 1127. However, the doctrine also provides that if an employee is a borrowed employee at the time of some alleged tortious conduct, the loaning employer is not liable for the conduct. *Kawaguchi v. Gainer*, 361 Ill. App. 3d 229, 835 N.E.2d 435 (2005). Therefore, Smith's employer argued, because the warehouse was borrowing Smith from Staffing Resources when Smith gave the instructions to Behrens, Staffing Resources was not liable for Smith's alleged tortious act. Staffing Resources supported its motion for summary judgment with an affidavit from its chief operating officer, Betty Myers, who swore that when the temporary employment agency sends employees to cargo facilities, Staffing Resources would not instruct, direct, supervise, control or manage the employees' work, and that while Smith was working at the California Cartage warehouse, the warehouse gave her information as to where she should work, the type of work she should do, and the manner in which her work was to be completed, and retained the right to terminate her employment at the warehouse if it deemed her job performance inadequate. The trial court found that Staffing Resources was a loaning employer to California Cartage and granted the request for summary judgment.

On appeal from the ruling in favor of Staffing Resources, Behrens first contends it allows Staffing Resources to benefit from the exclusivity provision of the Workers' Compensation Act. Behrens argues the ruling should be reversed because there is no language in the statute which exempts a "third party loaning employer" like Staffing Resources from tort liability. We find this

argument unpersuasive because there is no indication in the record on appeal that Staffing Resources attempted to rely upon any provision in the Workers' Compensation Act. Staffing Resources' motion for summary judgment relied on the common law doctrine of *respondeat superior*. Staffing Resources invoked the common law rather than the statute Behrens now cites.

Behrens' second contention is that the summary judgment ruling is flawed even under the common law doctrine of *respondeat superior*, because the determinative test for liability for a loaned servant is the scope-of-employment test rather than the right-to-control test. Behrens supports this argument with citation to Oregon case law, and he does not acknowledge that the motion for summary judgment, and, therefore, the order at issue, was based on Illinois cases, such as *Kawaguchi*, which indicate this jurisdiction uses the right-to-control test to determine liability for a loaned servant. *Kawaguchi v. Gainer*, 361 Ill. App. 3d 229, 835 N.E.2d 435 (2005) (employing the right-to-control test and indicating it has been the most widely accepted test of liability under the loaned-servant doctrine). In fact, in his response brief in opposition to the motion for summary judgment, Behrens cited *Crespo v. Weber Stephen Products Co.*, 275 Ill. App. 3d 638, 641, 656 N.E.2d 154, 156 (1995), which states, "[t]he primary factor in determining a borrowed-employment relationship is the right to control the manner and direction of the subject employee's work." See also *Gundich v. Emerson-Comstock Co.*, 21 Ill. 2d 117, 123, 171 N.E.2d 60, 63 (1960) ("the criteria reiterated in the Illinois case law for the existence of a master-servant relationship is the right to control, which includes the power of discharge"); 17 Ill. L. & Prac. Employment §3, at 365 (2006) ("Whether a transfer of employment occurs depends on whether the alleged borrowing employer has the right to control the allegedly

borrowed employee"); *Binz v. Brandt Construction Co.*, 301 F.3d 529, 533 (7th Cir. 2002) ("When determining whether the loaned-servant doctrine applies, Illinois law provides that several factors be considered; however, the dominant factor to be considered is who has the right to control the manner in which the work is being completed"). It appears to be well settled that Illinois uses the test Behrens now contends is "the wrong" one. Moreover, the first of the two Oregon cases he cites, *Jenkins v. AAA Heating & Cooling, Inc.*, 245 Or. 382, 421 P.2d 971 (1966), addressed whether one of the parties was an independent contractor or an employee, and thus, lends no support for Behrens' position. The other Oregon case he relies upon, *Perry v. Express Services, Inc.*, 143 Or. App. 321, 923 P.2d 673 (1996), applied Oregon's statutes and case law to determine the liability of a temporary employment agency, which has no impact on Illinois.

Application of the right-to-control test leads us to conclude that, with respect to Smith, Staffing Resources was a loaning employer to California Cartage. The unchallenged affidavit of Staffing Resources' chief operating officer indicated the warehouse had the right to direct and control Smith's work activities and the manner in which she performed her work, at least on a temporary basis, and the right to remove her from the temporary assignment and send her back to Staffing Resources. Smith was under the direction and control of California Cartage, not Staffing Resources, when she allegedly gave the incorrect instructions which led to Behrens' physical injuries. Accordingly, Behrens could not maintain a tort claim against Staffing Resources based on Smith's alleged tortious conduct while working at the Elwood warehouse. There was no genuine issue as to any material fact and Staffing Resources was entitled judgment

on the tort claim as a matter of law.  The trial court's decision to grant the summary judgment motion was proper.  The decision is affirmed.

Affirmed.

CAHILL and R. GORDON, JJ., concur.