# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Prodanic v. Grossinger City Autocorp, Inc.*, 2012 IL App (1st) 110993

---

| | |
|---|---|
| Appellate Court Caption | MOEVANU PRODANIC, Individually and as Special Administrator for the Estate of Milovan Prodanic, Deceased, Plaintiff-Appellant, v. GROSSINGER CITY AUTOCORP, INC., Defendant-Appellee (Grossprops Associates, LLC, Defendant; Grossinger MotorCorp, Inc., and United Heartland, Inc., Intervenors-Plaintiffs). |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-0993 |
| Filed | July 19, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a wrongful death and survival action where the undisputed facts established that plaintiff's deceased husband was a borrowed employee of defendant at the time he was killed while repairing an overhead door on defendant's premises, plaintiff's exclusive remedy was provided by the Workers' Compensation Act, and therefore summary judgment was properly entered for defendant. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-258; the Hon. Drella C. Savage, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Stevan Krkljes, of Schiff, Gorman & Krkljes, of Chicago, for appellant.

William C. Lindsay, Joseph P. Postel, David S. Osborne, and Christopher J. Picket, all of Lindsay, Rappaport & Postel, LLC, of Chicago, for appellee.

Panel

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion.

Justices Fitzgerald Smith and Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1    This case arises from fatal injuries sustained by Milovan Prodanic (Mike) when an overhead garage door opened while he was repairing it on the premises of Grossinger City Autocorp, Inc. (City Autocorp). Moevanu Prodanic, Mike's wife, then filed a wrongful death and survival action individually and as special administrator for the estate of her deceased husband. The trial court ultimately granted summary judgment in favor of defendant City Autocorp, which asserted that because Mike was a borrowed employee, the Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 2008)) provided plaintiff's exclusive remedy. On appeal, plaintiff contends the trial court improperly granted summary judgment in favor of City Autocorp because a genuine issue of material fact exists as to whether Mike was a borrowed employee. Finding no such issues of material fact, we affirm the trial court's judgment.

¶ 2    We recite only those facts necessary for an understanding of the procedural posture of this case and the resolution of this appeal. The record essentially shows that siblings Gary Grossinger (Gary) and Caroline Grossinger (Caroline) operated numerous corporations and car dealerships within the same corporate family. It is undisputed that Mike was hired by Grossinger Chevrolet (Chevrolet) located in Palatine and that at the time of Mike's injury on December 29, 2008, he was working on the premises of City Autocorp, doing business as Grossinger City Toyota (Toyota) at 1233 North Wells Street in Chicago. Plaintiff commenced this action in January 2009, and the amended complaint raised wrongful death and survival claims against City Autocorp as well as Grossprops Associates, LLC (Associates), which appears to have leased the premises at issue to City Autocorp. In addition, the amended complaint alleged that Mike was employed by Grossinger MotorCorp, Inc. (MotorCorp). The trial court subsequently granted leave to intervene to MotorCorp, which, like the amended complaint, claimed that it was Mike's employer. The court also granted Motorcorp's workers' compensation administrator, United Heartland, Inc., leave to intervene. Notwithstanding allegations that Motorcorp was Mike's employer, our record is silent as to the basis for this allegation and does not reflect any meaningful relationship

between Motorcorp and the other corporations involved in this case. In any event, Motorcorp's alleged involvement is not at issue on appeal.

¶ 3 The amended complaint alleged, in pertinent part, that Mike was injured while performing work in the scope of his employment at 1233 North Wells Street. Specifically, the complaint alleged that Mike was standing on an elevated work platform and working on an overhead garage door when that door was remotely activated, causing Mike and the platform to fall and resulting in his death. In addition, the complaint essentially alleged that City Autocorp breached its duty to maintain the premises with due care and caution by possessing an unsafe overhead garage door and failing to take certain precautions with respect to the garage door while it was being repaired.

¶ 4 Several depositions were taken during discovery. Gary testified that he was the president of City Autocorp and Chevrolet and that he generally alternated his time spent at those entities. Gary hired Mike to be his driver and to perform maintenance work. Gary also testified that Mike was hired with the understanding that he would work at both entities but no records were kept regarding how many hours he worked at each location. Gary was the only person with the authority to discharge Mike from his employment. Although Mike was hired through Chevrolet and Gary considered Mike to be an employee of both entities, Chevrolet paid Mike's salary. In addition, one workers' compensation policy covered the employees of all Grossinger dealerships and each dealership paid its share. Mike was included in the payments made by Chevrolet, which also provided Mike with a cell phone and the car Mike used to drive Gary.

¶ 5 Mike used both his own tools and tools purchased by Chevrolet. When Mike needed to purchase items for repairs, he was given money by the dealership that needed the repair. Thus, City Autocorp also paid for some of Mike's supplies and tools. In addition, Mike had the authority to obtain bids from contractors to perform work at either dealership, but needed approval from Gary or the general manager of the respective dealership in order to hire a contractor. Gary further testified that Chevrolet owned the lift that Mike had been using during the accident. Caroline also testified that she was the vice president of Chevrolet and City Autocorp and corroborated Gary's testimony that one workers' compensation policy existed for all Grossinger employees, but she had no knowledge regarding Mike's job description and had no authority to discharge him.

¶ 6 Elizabeth Zwierzynski, Chevrolet's office manager, testified in her deposition that Gary hired Mike as his driver and as a maintenance man. Mike was hired to perform work for Chevrolet as well as Grossinger stores in Chicago. Mike's paperwork was processed through Chevrolet when he was hired and Chevrolet gave Mike a weekly paycheck as a salaried employee. In addition, Chevrolet had a charge account that Mike used to purchase gas. Zwierzynski identified Mike's employee file and his signature on several employment related documents, which bore a variety of Grossinger corporate names.

¶ 7 Brian Weinberg testified that he was the general manager of the Wells Street dealership, that his paychecks were issued from "Grossinger City Toyota Scion," and that he was not familiar with a company called "Grossinger City Toyota doing business as City Autocorp, Inc." Mike was "the maintenance man" for the Wells Street dealership and came there twice

a week but Weinberg did not hire him or give him a paycheck. Weinberg and Brian Coster, the service director at the Wells Street dealership, would also call Mike to come in at other times and Mike had his own set of keys. Mike did everything that Weinberg asked him to do. In addition, Weinberg did not give Mike instructions regarding how to complete his tasks, but Weinberg had the authority to stop Mike if he was doing something that was not safe. Other employees of the Wells Street dealership occasionally assisted Mike in performing maintenance. If Mike needed to purchase a part, he would do so and bring the receipt to Weinberg or Coster or he would be given the Home Depot credit card and return with the receipt. Furthermore, Weinberg was ultimately responsible for hiring contractors for maintenance issues but Coster would also have been informed if a contractor made a bid. Weinberg did not know whether he had the authority to discharge Mike but would have consulted Gary with any concerns.

¶ 8    Coster testified that he was the service director for "Grossinger Toyota," an entity that had buildings at 1233 North Wells Street and 1241 North Wells Street. Coster did not know which entity hired Mike or paid him, but Gary alone had the authority to terminate his employment. Mike generally came to the Wells Street dealership every Tuesday or Thursday. If Mike was needed on a different day, Weinberg or Coster would call Mike on his cell phone, which he owned. Mike also used only his own tools. In addition, he occasionally used a vehicle owned by the Wells Street dealership, had his own keys to the dealership and knew the code to deactivate the alarm system. Coster would write down tasks that Mike needed to complete on a given day but Coster did not tell Mike exactly how to complete his tasks. Mike was self-sufficient and completed all his tasks. Nonetheless, Coster had the authority to stop Mike if he was doing something unsafe. Furthermore, no paper work was generated for the jobs Mike did unless he purchased materials and sought reimbursement. On the day of the accident, Coster had explained the problem with the garage door to Mike over the phone and Mike had been assisted by a porter while making repairs at the time of the accident.

¶ 9    Jeffrey Jackson, the office manager for City Autocorp doing business as Toyota, testified that when Gary hired Mike, he was placed on the Chevrolet payroll and introduced to Jackson. Gary told Jackson that Mike would come to City Autocorp twice a week or as needed. Mike performed work at both dealerships but no paperwork was performed and Mike would still be paid by Chevrolet. As a result, Jackson never issued Mike a paycheck. Chevrolet also paid for Mike's workers' compensation coverage. In addition, Mike generally drove Gary in a car owned by Chevrolet and kept tools, owned by both himself and Chevrolet, in that car. The scissor lift at City Autocorp was also owned by Chevrolet. When Mike needed to purchase items for City Autocorp doing business as Toyota, Mike was given a Home Depot credit card issued to Toyota and would present Jackson with receipts. Furthermore, Weinberg, Coster and Gary were the only individuals at City Autocorp with the authority to assign Mike work. Weinberg would also call Mike to come in to the dealership. As the individual responsible for issuing checks at City Autocorp, Jackson knew that Weinberg and Coster were employees of City Autocorp. Although Gary had the authority to terminate Mike's employment, no one else at City Autocorp had that authority. Steve Morgenstern, controller for MotorCorp, corroborated Jackson's testimony that Mike drove Gary around, performed repair work for him and was paid by Chevrolet, which also provided

Mike's workers' compensation coverage.

¶ 10    Andres Alcaraz first testified in his deposition that he was employed by Grossinger City Autoplex, which issued his paychecks. He also testified, however, that his place of employment was located at 1241 North Wells Street, that it was called Grossinger Toyota and Cadillac and that Coster was his immediate supervisor. In addition, Alcaraz testified that Mike, Gary's driver, would come with Gary to the dealership and ask if any work needed to be done. Alcaraz had previously gone with Mike to Home Depot to purchase items for the dealership and Mike had a "Grossinger" credit card. On the day of the accident, Alcaraz had been assisting Mike with repairs to the garage door.

¶ 11    In December 2010, City Autocorp moved for summary judgment, arguing, in pertinent part, that because Mike was City Autocorp's borrowed employee at the time of the accident, his claim against City Autocorp was barred by the exclusive remedy provision of the Act (820 ILCS 305/5(a) (West 2010)). Specifically, City Autocorp argued that Chevrolet loaned Mike to City Autocorp as its employee, that City Autocorp exercised complete control over him while on loan and that he reported to City Autocorp managers for assignments. City Autocorp also argued that its managers could stop Mike's work if they believed his conduct was not safe and that Mike relied on City Autocorp's other employees to assist him. In addition, City Autocorp argued that it provided Mike with tools and that Chevrolet relinquished control over the lift for Mike's use. City Autocorp further argued Mike implicitly consented to his employment with City Autocorp because he traveled to a different location, in a different city, where he worked for different people on a regular basis and completed every assignment he received from City Autocorp managers. Attached to the motion were the transcripts from the depositions of Gary, Coster, Jackson, Zwierzynski, Alcaraz and Weinberg, as well as an affidavit executed by Weinberg, in which he added to his prior deposition testimony that during the nine months in which Mike came to work at City Autocorp as a maintenance employee, Mike was never accompanied by a manager or other employee of Chevrolet and as a result, Chevrolet never gave him instructions as to his work at City Autocorp.

¶ 12    Our record indicates that plaintiff filed a response, which plaintiff has failed to include in our record on appeal, and City Autocorp filed a reply. The parties later stipulated that the record should include all of the aforementioned deposition transcripts, notwithstanding that the parties did not identify the pleadings to which the deposition transcripts of Morgenstern and Caroline were originally attached. Following a hearing, the trial court granted City Autocorp's motion for summary judgment and subsequently entered a written order finding no just reason to delay enforcement or appeal (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)).

¶ 13    On appeal, plaintiff asserts the trial court improperly granted summary judgment in favor of City Autocorp because a genuine issue of material fact exists regarding whether Mike was its borrowed employee. Summary judgment is proper where the pleadings, admissions, depositions and affidavits demonstrate there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201 (2008); 735 ILCS 5/2-1005 (West 2010). In determining whether a genuine issue of material fact exists, the court must consider such items strictly against the movant and liberally in favor the opponent. *Williams v. Manchester*, 228 Ill. 2d 404, 417

(2008). Summary judgment can aid in the expeditious disposition of a lawsuit but it is a drastic measure and, therefore, should only be permitted where the movant's right is clear and free from doubt. *Williams*, 228 Ill. 2d at 417. We review the trial court's order granting summary judgment *de novo*. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009).

¶ 14    The Act provides protection to workers for accidental workplace injuries by imposing liability on the employer notwithstanding fault. *Lanphier v. Gilster-Mary Lee Corp.*, 327 Ill. App. 3d 801, 802 (2002). In exchange, section 5(a) of the Act states that "[n]o common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." 820 ILCS 305/5 (West 2008). Thus, pursuant to section 5(a), employees relinquish any common-law or statutory right to damages from their employer as part of the *quid pro quo*, pursuant to which an employer assumes liability under the Act but is relieved of the possibility of large damage verdicts. *Chaney v. Yetter Manufacturing Co.*, 315 Ill. App. 3d 823, 826 (2000). Furthermore, section 5(a) precludes an employee from bringing a civil action against a borrowing employer. *Chaney*, 315 Ill. App. 3d at 830.

¶ 15    Pursuant to the loaned employee doctrine, an employee who is in the general employment of one entity may be loaned to another entity for the performance of special work, thereby becoming the employee of the entity to whom he has been loaned. *Crespo v. Weber Stephen Products Co.*, 275 Ill. App. 3d 638, 641 (1995). Whether a loaned employee status exists is generally a question of fact, but it constitutes a question of law if the facts are undisputed and capable of one inference. *Chaney*, 315 Ill. App. 3d at 827. Our supreme court has stated that the inquiry required to determine whether a loaned-employee status exists is twofold: (1) whether the borrowing employer had the right to control and direct the manner in which the employee performed the work; and (2) whether a contract of hire existed between the borrowing employer and the employee. *A.J. Johnson Paving Co. v. Industrial Comm'n*, 82 Ill. 2d 341, 348 (1980). Although plaintiff suggests we should not follow the two-prong analysis set forth in *A.J. Johnson Paving Co.* because that case involved a workers' compensation arbitration award (*A.J. Johnson Paving Co.*, 82 Ill. 2d at 344) and that case is rarely cited in civil lawsuits, plaintiff has failed to provide any explanation as to how this distinction meaningfully impacts the determination of whether an employee was borrowed. See *Chaney*, 315 Ill. App. 3d at 827 (citing the aforementioned two-prong analysis); *Crespo*, 275 Ill. App. 3d at 641; see also *Chavez v. Transload Services, L.L.C.*, 379 Ill. App. 3d 858, 862 (2008) (stating that of the several factors to be considered, the borrowing employer's control and the employee's consent are the most important). Accordingly, we adhere to supreme court precedent.

¶ 16    The primary factor in determining whether a borrowed employee situation exists is the right to control the direction and manner of the employee's work. *Crespo*, 275 Ill. App. 3d at 641. Our supreme court has found that the following factors support a determination that the borrowing employer had the right to control and direct the manner in which the employee

performed the work: (1) the employee worked the same hours as the borrowing employer; (2) the employee received instruction from the borrowing employer's foreman and was assisted by the borrowing employer's employees; (3) the loaning employer's supervisors were not present; (4) the borrowing employer was permitted to tell the employee when to start and stop working; and (5) the loaning employer relinquished control of its equipment to the borrowing employer. *A.J. Johnson Paving Co.*, 82 Ill. 2d at 349. Specifically, in *A.J. Johnson Paving Co.*, the court found the determination that the employee was borrowed was not foreclosed by the fact that the employee's skill as an operator of a paving machine permitted him to control the machine and technical details of its use. *A.J. Johnson Paving Co.*, 82 Ill. 2d at 349. In addition, the court found it was irrelevant that the employee received his salary from the loaning employer, rather than the borrowing employer. *A.J. Johnson Paving Co.*, 82 Ill. 2d at 349. Furthermore, the appellate court has considered whether the borrowing employer had "the equivalent of a right to dismiss," observing in one instance that the borrowing employer could dismiss the employee from service at its plant, even though it could not discharge the employee from the loaning employer. *Chaney*, 315 Ill. App. 3d at 826, 829; see also *Emma v. Norris*, 130 Ill. App. 2d 653, 657 (1970) ("The power to discharge or its equivalent is conceded to be a condition precedent to being an employer.").

¶ 17        As to the second factor, the employer-employee relationship may be based on an express or implied employment contract. *A.J. Johnson Paving Co.*, 82 Ill. 2d at 350. In addition, an individual may be the general employee of one employer and the loaned employee of another, but he must consent to the new relationship. *Emma*, 130 Ill. App. 2d at 657. Implied consent exists where the employee knows that the borrowing employer generally controls or is in charge of the employee's performance. *Crespo*, 275 Ill. App. 3d at 641. Furthermore, the employee's acceptance of the borrowing employer's direction demonstrates the employee's acquiescence to the employment relationship. *Crespo*, 275 Ill. App. 3d at 641.

¶ 18        Here, no genuine issue of material fact exists, as the record before us permits only one reasonable determination, that Mike was a borrowed employee of City Autocorp. Construing the evidence liberally in favor of plaintiff, the depositions taken in this case show that City Autocorp had the *right* to control the manner in which Mike performed his work. Managers Weinberg and Coster testified that Mike regularly came to work at City Autocorp but that they could also call Mike and tell him to come in.[1] In addition, Coster testified that he would write down tasks that Mike needed to complete that day. The ability of City Autocorp managers to call Mike to come in and to set general time perimeters for his tasks indicates that City Autocorp had some control over Mike's hours. In light of the technical and generally independent nature of Mike's work in this case, there would have been no reason for City Autocorp to precisely align Mike's schedule with that of other City Autocorp employees.

[1] For clarification, we note that although it appears employees at the Wells Street dealership experienced some understandable confusion regarding the precise legal name of their employer or the entity that operated that location at the time of the accident, the parties appear to agree that Weinberg, Coster and Alcaraz worked at City Autocorp. As such, we will consider them to be employees of City Autocorp for purposes of our analysis.

¶ 19    Deposition testimony also showed that City Autocorp had the authority to control the work itself. It is undisputed that Mike took directions from Gary, the president of City Autocorp, Weinberg and Coster. While Weinberg and Coster testified that they did not explain to Mike how to complete his tasks, their testimony indicates that they had the right to do so. Both managers testified that they could stop Mike from working if they felt the manner of his work was unsafe. The record also shows it was unnecessary to control the manner of Mike's work, as he was self-sufficient and did not need instructions. In addition, the specialized technical nature of Mike's work renders the absence of specific instructions immaterial. Although plaintiff argues Mike did not need to consult City Autocorp to obtain bids from contractors, plaintiff has also acknowledged that Mike could not hire such contracts without approval from City Autocorp. Not only did City Autocorp supervisors have the right to control Mike's work, but Mike was assisted by City Autocorp employees, such as Alcaraz. In contrast, no Chevrolet supervisors or employees were present when Mike performed work at City Autocorp. Although Gary and Mike would go to that dealership together, it is clear that Gary went there as the president of City Autocorp, not Chevrolet. Furthermore, the testimony of Gary and Jackson shows that Chevrolet relinquished control of its lift to Mike for his work at City Autocorp. See *A.J. Johnson Paving Co.*, 82 Ill. 2d at 349. Mike's status as a borrowed employee finds additional support from the fact that Gary, as the president of City Autocorp, had the right to discharge Mike from employment.

¶ 20    Plaintiff argues that a change in the nature of an employee's work indicates a loaned employment situation exists (*Mosley v. Northwestern Steel & Wire Co.*, 76 Ill. App. 3d 710, 721 (1979)), but has failed to cite any support for the proposition that the absence of such a change indicates the opposite conclusion. Similarly, plaintiff contends that City Autocorp could not have acted as Mike's employer because he "was never processed as an employee of Autocorp," but fails to specify what requisite process was absent. In addition, testimony that Mike was officially hired and paid only through Chevrolet and that Chevrolet alone provided Mike's workers' compensation coverage is entirely consistent with a loaned employment situation. See *A.J. Johnson Paving Co.*, 82 Ill. 2d at 349 (finding it was irrelevant that the loaning employer paid the employee's salary). Furthermore, plaintiff has failed to explain how a finding of borrowed employment is negated by the fact that City Autocorp did not track the time Mike spent there, particularly where, as here, it is undisputed that Mike was a salaried employee, albeit one paid by Chevrolet.

¶ 21    The record also shows that at a minimum, an implied contract for hire existed between Mike and City Autocorp. Gary testified that he considered Mike to be the employee of City Autocorp and that he was hired with the understanding that he would work at both dealerships. *Cf. Emma*, 130 Ill. App. 2d at 655, 657-58 (finding, in pertinent part, that a genuine issue of material fact existed because the plaintiff's consent to a borrowed employment relationship was unclear where the alleged borrowing employer's president did not acknowledge that the plaintiff was its employee). Weinberg similarly testified that Mike was the "maintenance man" for City Autocorp. Mike's status as an employee of City Autocorp is corroborated by testimony that he had keys to the dealership, would be given a credit card to make purchases for the dealership, and occasionally used a car owned by that dealership. In addition, Mike traveled to City Autocorp, where he would comply with tasks

assigned by Weinberg and Coster, City Autocorp managers. See *Crespo*, 275 Ill. App. 3d at 642 (the employee's consent to work for the borrowing employer was supported by his appearance at the borrowing employer's facility, his response to instructions from the borrowing employer's supervising employees and the absence of other employees of the loaning employer). Thus, Mike clearly knew that City Autocorp was in charge of his performance and accepted its direction, demonstrating Mike's acquiescence to an employment relationship with City Autocorp. See *A.J. Johnson Paving Co.*, 82 Ill. 2d at 350. Although plaintiff argues that City Autocorp could have created a written contract with Mike, City Autocorp was not required to do so. In light of our determination, we need not determine whether Mike expressly agreed to an employment relationship with City Autocorp.

¶ 22       Finally, plaintiff contends that Chevrolet was not in the business of loaning employees to other entities, apparently relying on section 1(a)(4) of the Act. Section 1(a)(4) states, in pertinent part, that "[a]n employer whose business *** consists of hiring, procuring or furnishing employees to or for other employers operating under and subject to the provisions of this Act for the performance of the work of such other employers and who pays such employees their salary or wages *** shall be deemed a loaning employer within the meaning and provisions of this Section." 820 ILCS 305/1(a)(4) (West 2008). Although this section identifies one type of loaning employer, it does not exclude as loaning employers entities that are not in the business of supplying other employers with employees. In addition, section 1(a)(4) does not define a borrowing employer, the very issue before us. *Chaney*, 315 Ill. App. 3d at 826, 828.

¶ 23       As stated, the essential facts in this case are undisputed and capable of only one reasonable inference, that Mike was City Autocorp's borrowed employee. The Act provides plaintiff's sole remedy in this case. Because the record presents no genuine issue of material fact, City Autocorp was entitled to summary judgment as a matter of law.

¶ 24       For the foregoing reasons, we affirm the judgment of the trial court.

¶ 25       Affirmed.